## Daniel Lewy, Appellee, v. Standard Plunger Elevator Company, Appellant.

### Gen. No. 25,218.

1. Contracts, § 125*—*what is effect of illegality of consideration.* A contract based upon an illegal or immoral consideration is unenforceable.

2. Contracts, § 144*—*when contract to influence legislation is unenforceable.* A contract to perform services which will necessarily tend to influence improperly legislation, public contracts or the administration of justice, by reason of contingent compensation provided therein, is unenforceable.

3. Appeal and Error, § 365*—*when invalidity of contract may be considered on appeal.* Even though the objection that the contract on which recovery is sought is void as against public policy in that it provides a contingent compensation for securing a contract from public officers, was not pleaded or otherwise raised in the trial court, the public interest requires that it be considered by the Appellate Court.

4. Principal and Agent, § 69*—*when public policy does not prevent compensation.* Public policy will not prevent an agent from recovering commissions, from his principal, under a contract providing for commissions contingent upon sales, because the sale of the article was made to public officials, where no improper means were adopted in effecting the sale.

5. Principal and Agent, § 83*—*when contract for commissions is established by evidence.* In an action by a salesman to recover commissions on sale, pursuant to a contract between plaintiff and defendant that defendant would pay plaintiff commissions on sales by him, evidence examined and *held* to support a finding that such sale was effected by plaintiff and was made pursuant to his original

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

contract and not under a special arrangement as claimed by defendant.

6. PRINCIPAL AND AGENT, § 81*—*when defendant has burden of establishing agreement.* In an action by a salesman against his employer to recover commissions claimed to be due him under his contract on a sale made thereunder, the burden is on defendant, who claims that such sale was made under a special agreement, to establish such contention.

7. PRINCIPAL AND AGENT, § 82*—*what evidence as to damages is admissible.* In an action by a salesman to recover for breach of his contract of employment, it is proper to permit him to testify as to his earnings with other employers for the purpose of fixing a basis for damages for loss of prospective commissions under the contract in suit, and his evidence need not be limited to profits resulting from such contract.

8. APPEAL AND ERROR, § 1484*—*when admission of evidence as to damages is harmless.* Error in admitting evidence as to speculative profits in an action for breach of contract is harmless where the jury allowed no speculative damages.

Appeal from the Superior Court of Cook county; the Hon. M. L. McKINLEY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1919. Affirmed. Opinion filed May 28, 1920. *Certiorari* denied by Supreme Court (making opinion final).

JOHN A. BLOOMINGSTON and ELLIS & LEWIS, for appellant.

SCHAFFNER & FRIEND and ISAAC S. ROTHSCHILD, for appellee.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

Plaintiff below brought suit against defendant-appellant in an action of assumpsit. The declaration alleged the making of a contract between the parties on the 1st day of November, 1914, by the terms of which appellee, Daniel Lewy, was employed as a salesman for the term of five years beginning on that date and ending October 31, 1919. In one of the counts the con-

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

tract is set up *in hæc verba*. Its material provisions are that the territory assigned to Lewy is the State of Illinois with the right to solicit specific jobs from outside territory "when specific instructions are issued to that effect by the party of the first part." That his compensation shall be a commission of 5 per cent of the total contract price for the installation of Standard Plunger Elevators on all contracts secured by him until the total aggregate value of contracts secured during any fiscal year, beginning November 1, 1914, amounts to $100,000 and a commission of 2½ per cent on the total contract price of the aggregate value of contracts in excess of $100,000 secured during any such year, said commissions to be payable half upon the signing of the contract and the other half when payments made by the customer equal 50 per cent of the contract price. And Lewy agrees that "each year, during the existence of the contract, he will secure, at least, $100,000 in contracts for the installation of Standard Plunger Elevators."

It is specifically provided that: "The party of the second part must be instrumental in bringing the elevators sold by the party of the first part to the attention of the prospective customer, and bring the parties together with the result that a contract is agreed to and signed; otherwise, the party of the second part shall not be entitled to any commission." By another clause it is provided that the "Party of the first part agrees to advance to said party of the second part the sum of two hundred fifty ($250) dollars a month, payable on the first day of each month, during the term of this agreement, and to charge said sums advanced against the commissions earned by said party of the second part."

It is also stated that the agreement may be canceled and terminated by either party upon the failure of the other party to comply with any clause of the agreement, and upon the giving of the other party 30 days'

notice of the failure to comply "otherwise it is to remain in full force and effect until the termination of the agreement as specified herein."

The seventh clause of the contract further provided that in case of rightful termination of the agreement before the expiration thereof, "the party of the second part shall be entitled to a commission as hereinbefore specified upon any contract secured by the party of the first part in the territory covered by this agreement, provided, however, that the contract so secured is one on which the party of the second part has been working during the term of this agreement."

The declaration alleges that the plaintiff entered into the employ of the defendant and fully complied with all the terms and provisions of the contract from the 1st day of November, 1914, until the 12th day of February, 1916, when he was wrongfully discharged by the defendant "by means whereof the plaintiff has lost and been deprived of all the commissions, drawing accounts, profits and advantages which he might and otherwise would have derived and acquired from continuing in the employ of the defendant, as aforesaid; and which the defendant has from time to time wholly refused to pay or allow the plaintiff, and the plaintiff has been and is by means of the premises wholly unemployed."

Common counts were also filed with a copy of the instrument sued on. To this declaration defendant filed the plea of the general issue and special pleas in which it alleged its right to discharge plaintiff under the terms of the contract.

Two trials by jury have been had on these issues. In the first trial the plaintiff recovered a verdict of $7,600; on the second a verdict of $7,000 on which the court entered judgment. It appears that the principal matter in controversy is whether under the terms of the contract plaintiff is entitled to a commission on a contract made by defendant with the County Com-

missioners of Hamilton County, Ohio, by which appellant was to install elevators in the courthouse there at the price of $103,855. The contract between appellant and appellee was terminated by a letter to appellee dated January 12, 1916, in which it stated:

"Pursuant with the provisions of the contract between you and this company, please take notice that the agreement between us, dated November 1st, 1914, is hereby cancelled and terminated, because of your failure to comply with its provisions, such cancellation and termination to take effect 30 days from the date upon which this notice was delivered to you. Specifically, you have failed to secure, at least, $100,000 in contracts for the installation of Standard Plunger Elevators, during the year between November 1st, 1914 and November 1st, 1915, and you have also broken your agreement to perform faithfully, diligently and to the utmost of your ability such duties as have been specified and required of you by the company from time to time."

This letter was delivered to plaintiff's office by an attorney January 14, 1916. Plaintiff continued thereafter to give all his time to the work of the company until February 14, when, pursuant to the notice, he quit. It was admitted on the trial that contrary to the statement in the notice the defendant had faithfully and diligently performed his required duties so that the principal issue of fact is whether plaintiff failed to install the required number of elevators between November 1, 1914, and November 1, 1915, as claimed.

From other items of the account which are conceded to be correct it is apparent that if plaintiff is entitled to commissions on the Hamilton county courthouse job then this provision of the contract was also complied with and the discharge was wrongful. In so far as that issue was one of fact it seems to be settled in favor of the plaintiff by the verdict of the jury, but appellant here, and apparently for the first time,

argues that the contract as applied to the order for installing these elevators in the Hamilton county court-house is void as against public policy in that it provides for a contingent compensation for securing a contract from a public official. On this point we are cited to *Providence Tool Co. v. Norris*, 2 Wall. (69 U. S.) 45; *Goodrich v. Tenney*, 144 Ill. 422; *County Com'rs Randolph County v. Jones*, 1 Ill. (Breese) 237; *Cook v. Shipman*, 24 Ill. 614; *Crichfield v. Bermudez Asphalt Paving Co.*, 174 Ill. 466 and *Hyland v. Oregon Hassam Pav. Co.*, 74 Ore. 1, 144 Pac. 1160. That a contract based upon an illegal or immoral consideration is unenforceable, is elementary, and that a contract to perform services which would tend necessarily to improperly influence legislation, public contracts or the administration of justice, by reason of contingent compensation provided therein, is unenforceable, is established by the cases cited.

Appellee says that this defense was not pleaded nor was it raised in any other manner in the trial court. This is true. Nevertheless, if the point is good as made, it would be the duty of this court, although it was not preserved in the usual manner by pleading or objection made or exception taken, to sustain the contention. The reason for this is the transcendent interest of the public in such contracts and in the faithful performance of official duties. Our courts have always enforced these rules of law with zeal and diligence, and, in so doing, have, perhaps, not at all times been careful to state the limitations of the doctrine. We assume that there is no rule of law which makes it illegal to negotiate a contract for the sale of goods or supplies to a public agency and for public purposes. The distinction between personal influence used to secure legislation, public contracts, etc., and legitimate professional services performed in making the legislature or public officials acquainted with the merits of measures desired or merchandise to be sold is pointed

out in *Trist v. Child*, reported in 21 Wall. (U. S.) 441, and cited with approval in the case of *Oscanyan v. Winchester Repeating Arms Co.,* 103 U. S. 261. In that case after stating that legitimate professional services may not be condemned, the court said:

"So, too, with reference to furnishing the government with arms or supplies of any kind. It is legitimate to lay before the officers authorized to contract, all such information as may apprise them of the character and value of the articles offered, and enable them to act for the best interests of the country. And for such services compensation may be had as for similar services with private parties, either upon a *quantum meruit* or, where a sale is effected, by the ordinary brokerage commission. And here it may be observed, in answer to some authorities cited, that the percentage allowed by established custom of commission merchants and brokers, though dependent upon sales made, is not regarded as contingent compensation in the obnoxious sense of that term, which has been so often the subject of animadversion by this court, as suggesting the use of a sinister or corrupt means for accomplishing a desired end."

It is to be noted the commission here claimed on the Hamilton county courthouse sale is precisely the same in amount as that provided for orders from private enterprises.

In attempting to sustain another and different defense the defendant upon the trial called a majority of the Hamilton county courthouse commissioners as witnesses and by their testimony showed affirmatively that no improper influences were used in obtaining this contract. Appellant thus produced the evidence which gives appellee a clean bill of health on this point, which appellant raises, apparently, for the first time in this court. We do not think there was anything in this contract contrary to public policy, or that it necessarily tended to require the doing of anything against good morals.

Appellant next contends, somewhat inconsistently, that the law of Ohio was such with reference to this transaction that plaintiff, under the terms of his contract with the defendant, could not earn any commission by reason of the fact that the Ohio law provides contracts of this kind must be awarded and made with the person who offers to perform the labor and furnish the material at the lowest price and who gives a good and sufficient bond. Appellant says (truly) that the Ohio courts passed upon this very contract and held that it was made in conformity with this law which required the contract to be given to the lowest bidder. We are not impressed by this argument of appellant. Every sale is presumably made to the lowest bidder and if the matter of making this sale of elevators was altogether so easy as appellant would have us believe, it is passing strange that the defendant should have requested the plaintiff to make many trips to Cincinnati at defendant's expense for the sole purpose of getting the contract. True, the work had to be let to the lowest bidder but the Ohio law does not require that the defendant's elevators should be specified as the ones to be put in the building. Also the commissioners were empowered if they saw fit so to do to reject any and all bids. It is perfectly apparent that there was as much legitimate work for an energetic salesman to do in the way of securing this public contract as there would have been had defendant been dealing with a private enterprise.

Two things, as we construe this contract, were necessary on plaintiff's part to earn his commissions. One was that he should bring the elevators sold to the attention of the prospective customer, and the other, that he should bring the customer and his employer together with the result that a contract was agreed to and signed. These conditions were complied with by the plaintiff, at least it was a question for the jury as

to whether the conditions had in fact been complied with and the jury decided in plaintiff's favor.

The evidence shows that much time and effort were put forth by plaintiff in demonstrating to the commissioners the supposed superiority of defendant's elevators over other types, particularly electrical elevators, which through a change of specifications might have been substituted. He also met and overcame objections that the defendant was a nonresident competitor and other local objections made by reason of that fact. He gave valuable assistance in preparing the bid in such a way as to outwit defendant's competitors. All these matters required skill of a high order and tact as well, and were handled by plaintiff in such a way, apparently, that without the use of any improper means, defendant secured this contract. We do not think this second contention of the defendant can be sustained.

Another issue of fact is raised by appellant's further contention that the services of plaintiff in connection with the Hamilton county courthouse contract were rendered pursuant to special arrangements made between plaintiff and the company with reference thereto which superseded the contract of November 1, 1914. In that connection testimony was offered by the defendant tending to show a conversation between the president of appellant and plaintiff to that effect. It seems the burden of proof is clearly upon appellant to establish this contention if true. The conversation is denied by the plaintiff and letters of the defendant in evidence are not consistent with the theory that such special arrangement was made. Here again the jury have found the issues for the plaintiff. We think the findings justified by the evidence. Indeed the undisputed testimony that the contract dated November 1, 1914, was not, in fact, signed until September 23, 1915, *months after the Hamilton county contract was secured,* and that no exception as to that contract ap-

pears therein, seems to have made it impossible for the jury to decide otherwise on that issue.

Appellant also contends that the court erred in permitting plaintiff to testify, over objection, as to his earnings with other employers for the purpose of fixing a basis for damages for loss of prospective commissions, and argues that such evidence should have been limited to past profits resulting from the same contract from which damages were sought, citing *Roth v. Spero,* 48 N. Y. Misc. 506, 96 N. Y. Supp. 211. We think the evidence was admissible under the rule laid down in *Barnett v. Caldwell Furniture Co.,* 277 Ill. 286. But however that may be, the defendant was not injured, as the jury apparently did not allow any speculative damages.

Appellant also complains of instructions given and refused but we find no error in any of them which would require reversal.

The judgment, we think, is not larger than plaintiff was clearly entitled to under the terms of the contract without any allowance for prospective damages sustained by reason of its wrongful termination.

It will be affirmed.

*Affirmed.*

Mr. Justices Barnes and Gridley concur.