(No. 24750.—

THE PEOPLE *ex rel.* Edward J. Barrett, Auditor of Public
Accounts, *vs.* THE FARMERS STATE BANK OF IRVING-
TON, Appellee.—(LOUIS ALDAG *et al.* Appellants.)

*Opinion filed October 21, 1938—Rehearing denied Feb. 16, 1939.*

GUNN, J., specially concurring.
ORR, JONES, and WILSON, JJ., dissenting.

JUNE C. SMITH, HUGH V. MURRAY, JR., and RALPH L.
MAXWELL, for appellants.

HOUSE & HOUSE, for appellee.

Mr. JUSTICE FARTHING delivered the opinion of the
court:

By this appeal the stockholders who have paid their lia-
bilities on account of stock ownership seek to set aside a
decree of the circuit court of Washington county, which
directed the Auditor's liquidating receiver to pay interest
from the date of his appointment on all the adjudicated

claims against the Farmers State Bank of Irvington. The appeal was brought directly to this court, because a construction of section 6 of article 11 of the constitution of 1870 is involved.

On November 21, 1932, the bank was found to be insolvent and the Auditor of Public Accounts appointed a receiver. On the same day the Attorney General filed the dissolution and liquidation suit out of which this appeal arises. Certain creditors filed a representative suit in the circuit court on November 23, 1932, to enforce the stockholders' constitutional liabilities.

During the liquidation proceedings claims aggregating $105,872.45 were presented to the liquidating receiver and allowed by the Auditor of Public Accounts. That receiver presented a part of the claims to the circuit court April 25, 1933, other claims on May 13, 1933, and all the remaining claims on May 27, 1933, and the court entered appropriate orders approving them. In the suit against stockholders service was had on all final and former stockholders except seven who were either dead or insolvent. A decree was entered for full stockholders' liability against such stockholders and the same was paid. Those stockholders who overpaid the liability of the period for which they held stock had rebated to them such excess. The decree fixing their respective liabilities was rendered April 11, 1933, and a receiver was appointed to collect the various amounts found due. After deducting the costs and expenses of this proceeding, there remained in the receiver's hands $20,145.26, and it was stipulated that this money was all paid out in dividends to the bank's creditors. Apparently $16,936.36 was so paid by the receiver in the suit against the stockholders, and the balance in his hands of $3208.90 was paid by him to the liquidating receiver, who later distributed this amount to creditors.

The Auditor's receiver realized in cash $102,173.52 from the assets of the bank, of which amount $85,727.19 was

distributed to the creditors. The costs and expenses of the liquidation receivership were $16,446.33. On July 3, 1936, the principal demands of the creditors against the bank were paid in full, leaving assets in the hands of the receiver.

On May 13, 1937, the Auditor's receiver filed his petition in the liquidation proceedings, and averred that the principal of all claims against the bank was paid; that after such payment he still had in his hands assets of the appraised value of $13,433.07. He sought authority to pay interest on all the claims from the date of his appointment. That order was entered and is the order appealed from.

The first reason urged by appellants in support of their contention that it was error to order payment of interest on the claims against the bank, is that interest cannot be charged unless authorized by contract or statute. This is undoubtedly the rule at law, (*United States Brewing Co.* v. *Dolese & Shephard Co.* 282 Ill. 588; *Geohegan* v. *Union Elevated Railroad Co.* 266 id. 482;) but in equity a different rule exists. Equity allows or withholds interest in accordance with what is equitable and just in view of all the circumstances in the case. Thus, in *Golden* v. *Cervenka,* 278 Ill. 409, 433, we held that the Central Trust Company was liable for interest from the time a demand was made for payment of money unlawfully withheld by it, and said: "The case is not one of those in which the statute provides that interest shall be allowed. In equity, however, interest is allowed because of equitable considerations, and is given or withheld as under all the circumstances of the case seems equitable and just.—*Keady* v. *White,* 168 Ill. 76." In the *Keady case* the same rule was applied and we held that the wife of an insolvent debtor, who had given him $400 which he was to use, together with the interest thereon, in purchasing the property his creditors sought to subject to the payment of their claims against him, was entitled to a superior right or lien for the $400, and that she was entitled

to interest. In *McKey* v. *McCoid,* 298 Ill. 566, the same rule was applied, but there the creditors of the insolvent husband were denied interest as against the wife, because the proof showed she had no fraudulent purpose or intent in receiving money from her husband to pay interest and taxes on her land.

In *Ryerson & Son* v. *Peden,* 318 Ill. 105, 109, we quoted with approval from *American Iron and Steel Manf. Co.* v. *Seaboard Air Line Railway Co.* 233 U. S. 261, 265, as follows: "And it is true, as held in *Tredegar Co.* v. *Seaboard Air Line Railway Co.* 105 C. C. A. 501, 183 Fed. 290, that as a general rule, after property of an insolvent is in *custodia legis,* interest thereafter accruing is not allowed on debts payable out of the fund realized by a sale of the property. But that is not because the claims had lost their interest-bearing quality during that period but is a necessary and enforced rule of distribution, due to the fact that in case of receiverships the assets are generally insufficient to pay debts in full. If all claims were of equal dignity and all bore the same rate of interest from the date of the receivership to the date of final distribution, it would be immaterial whether the dividend was calculated on the basis of the principal alone or of principal and interest combined. But some of the debts might carry a high rate and some a low rate, and hence inequality would result in the payment of interest which accrued during the delay incident to collecting and distributing the funds. As this delay was the act of the law, no one should thereby gain an advantage or suffer a loss. For that and like reasons, in case funds are not sufficient to pay claims of equal dignity, the distribution is made only on the basis of the principal of the debt. But that rule did not prevent the running of interest during the receivership, and if, as a result of good fortune or good management, the estate proves sufficient to discharge the claims in full, interest as well as principal should be paid. Even in bankruptcy, and in the face of the argument that

the debtor's liability on the debt and its incidents terminated at the date of adjudication and as a fixed liability was transferred to the fund, it has been held, in the rare instances where the assets ultimately proved sufficient for the purpose, that creditors were entitled to interest accruing after adjudication.—2 Black Com. 488; cf. *Johnson* v. *Norris,* L. R. A. 1915B, 884, 111 C. C. A. 291, 190 Fed. 460-5."

In the case before us it was stipulated, as we have pointed out, that all the money paid by stockholders in discharge of the judgments against them was received by the bank's creditors. Either through good fortune or good management, more than enough has been realized to discharge the total principal amount which remained due its creditors. Thus the situation developed where equity could allow interest, since equity is not bound by the rule at law concerning payment of interest. Unless the order appealed from is erroneous for some other reason, it must be affirmed.

Appellants contend that, in effect, the circuit court construed section 6 of article 11 of our constitution to include in the liabilities which accrued while they were stockholders of the bank, interest on the amounts due the bank's creditors for the period of liquidation. Appellee replies that the amounts due from the respective appellants as stockholders of the bank were fixed and determined by the decree against them in the stockholders' liability suit. Appellee also says that the rights of creditors against the bank's assets were not affected by the reduction in amount caused by payment in full by the stockholders of their liabilities as determined in the representative suit, because this did not wipe out the bank's indebtedness but only reduced it. Appellee also says that whatever claim stockholders might have to any surplus remaining out of the bank's assets cannot be permitted to defeat the claim to interest on the balance due after deducting the amounts received from the stockholders.

The order of the circuit court did not increase the liabilities of the bank's stockholders by requiring them to pay

interest on the balance remaining due the bank's creditors on their claims against the bank. The liabilities due from all stockholders, the appellants here, had been fixed by the decree in the representative suit, and all this money had been paid to the bank's creditors, as shown by the stipulation above referred to. When it developed that there was a surplus in the bank's assets beyond the balance due by way of principal to its creditors, the court was not called upon to construe section 6 of article 11 of our constitution to determine that the creditors were entitled to interest on their claims, for the period of liquidation, out of these bank assets. The bank was liable to its creditors for interest from the date of its suspension. However, interest could not be allowed in the ordinary case where the assets are not sufficient to pay the debts in full, but here there was a surplus of assets over the bank's liabilities and interest was chargeable and payable.

Appellants urge that the conclusion reached will deprive them of property without due process of law, because they will be compelled to pay debts of the bank for which they are not liable under the constitution. This argument is based largely on their construction of that part of section 11 of the Banking act, which provides: "After one year from the final dissolution of the bank, the Auditor shall make a *pro rata* distribution thereof to those claimants who have accepted dividends until such claim or claims are paid in full, and if any of said moneys shall then remain in his hands, the Auditor shall distribute the same *pro rata* to the stockholders." They say that this language means that the surplus shall be distributed only to final stockholders, and that such final stockholders are not liable in any event for interest on claims accruing before their period of stock ownership began. Quite to the contrary, the section would be unconstitutional if appellants' construction were adopted. The stockholders' liabilities are fixed by the constitution and cannot be altered by the legislature. Stockholders are

primarily liable to creditors, but after they have paid their liabilities, they are in the position of sureties who have paid their principal's debt. They then have the right to be reimbursed out of the surplus assets of the bank. The construction urged by appellants would deprive former stockholders of their right of reimbursement and would give the surplus assets to the final stockholders, to the loss of the former stockholders who have also paid their liabilities. Therefore, the claims against the bank cannot be considered as paid in full, so that ultimate distribution may be made to the final stockholders, before all stockholders have been reimbursed. In this connection appellants also insist that they are subrogated to the rights of the creditors who were paid, and that interest cannot, therefore, be paid to the original claimants. This contention assumes the point in issue,—i. e., whether the claims against the bank were paid in full without the payment of interest.

Appellants argue that the allowance of the claims by the court upon presentation by the receiver was not sufficient to give them the interest-bearing quality of judgments. They point to the fact that it is possible for the Auditor of Public Accounts, in rare instances, to liquidate a bank without the assistance of a court, and that it is not mandatory that the claims against the bank be presented to the court and put in judgment. We do not have such a case presented by this record, because all the claims were presented to and passed on by the court. Section 11 of the Banking act provides that the allowance or disallowance of claims by the court shall be deemed an adjudication in a court of competent jurisdiction. This can only mean that they have the character of judgments. The proceedings were not rendered *ex parte* merely because no notice to stockholders was required. In the main, the proceedings in the allowance of claims concerned the creditors and the receiver.

Appellants finally contend that the court had no power to increase the amount of the debts of the bank for which

the stockholders were liable as fixed by the decree in the stockholders' suit. The stockholders are not being called on to pay more than their constitutional liability as adjudicated. The liquidation of the bank is in the hands of the Auditor of Public Accounts, and the court in that suit has the power to determine the exact indebtedness of the bank. The finding of the court as to the bank's liabilities in the stockholders' suit is not conclusive on the liquidating receiver. While the result might be to decrease the surplus, the liabilities of the stockholders are not increased. Their ultimate liabilities were determined in the suit against them. In contemplation of law the claims against the bank were interest-bearing at all times, and payment of interest depended only upon there being a surplus. We do not apprehend that appellants have thus been deprived of any constitutional rights by the order directing the payment of interest.

The decree of the circuit court is right, and it is affirmed.

*Decree affirmed.*

Mr. JUSTICE GUNN, specially concurring:

I do not believe there is any doubt but that a depositor is entitled to interest from a defaulting bank, in case assets are found more than sufficient to pay the principal of his claim and administration expenses. The question presented here does not depend upon that rule but does depend upon the question whether using all. the assessments collected from stockholders and then using the remaining bank assets to pay the balance of the claims against the bank with interest, subjects the stockholders to a larger liability than provided in the constitution.

The liability of a stockholder to pay an assessment on his stock has been determined to be a contractual one. (*Golden* v. *Cervenka,* 278 Ill. 409.) Hence, every depositor in a bank has a claim upon two funds in case of the bank's suspension. He may file a claim with the receiver and he may sue the stockholders. The fund recovered from

the stockholders belongs to the depositor. It is, in a sense, collateral to the promise of the bank to pay in full on demand. In such a case, the creditor may rely on both securities. A creditor secured by collateral is permitted to prove his claim against the estate for the full amount because he has a double right of suing the debtor and also realizing on the collateral. They are concurrent rights and these rights remain the same if the debtor dies and dies insolvent. *Furness* v. *Union Nat. Bank,* 147 Ill. 570; *In re Bates,* 118 id. 524; *Kittredge* v. *Nicholcs,* 162 id. 410.

If a creditor holding a claim secured by collateral against an insolvent estate of a deceased person files and proves his claim for the full amount in the probate court, and, if it is allowed, realizes from his collateral a sum which is less than the amount of his claim, he will be entitled to a dividend upon the whole amount of his claim until it is fully paid. (*Furness* v. *Union Nat. Bank, supra; In re Bates, supra; Kittredge* v. *Nicholes, supra.*) The principle of these cases applies here.

In this suit the contract of the stockholder to pay an assessment to discharge liabilities accruing while he is a stockholder, constitutes a security owned by the depositor in addition to his claim and demand against the bank. Under the above rule, he can apply all sums realized from the assessments upon his deposit debt and then participate in the assets of the bank. If, after applying the collateral fund, the assets of the bank will discharge the principal amount, the surplus may be used to discharge bank obligations—in this case, interest.

Collateral does not become a part of the assets of an estate until the creditor's lien thereon is discharged and cannot be used to benefit other creditors until the claim of the creditor having the lien is paid in full. (*Furness* v. *Union Nat. Bank, supra; In re. Bates, supra; Kittredge* v. *Nicholes, supra.*) The "other creditors," thus referred to in this case, would fit the stockholders who have paid their

stock liability. Examined in this light, the liability of a stockholder is not increased and he is entitled to a rebate only in case all depositors are paid the full debt owing by the bank.

Nothing has been suggested indicating that a creditor provided with a security for the payment of a debt by constitutional mandate has any other or different rights with respect to the application of the same, than security taken under contract for the same. Therefore, the depositors are entitled to use the entire fund created by the assessment in reduction of their claim and then resort to the assets of the bank to discharge the debts of the bank in full.

Mr. JUSTICE JONES, dissenting:

The question in this case is: Can money realized from stockholders of a State bank, in satisfaction of their super-added liabilities, be used for the payment of interest to creditors and for costs and expenses of administration?

The liability of a stockholder for the debts of a bank is fixed by section 6 of article 11 of the constitution. It provides: "Every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors over and above the amount of stock by him or her held, to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder." It has been many times held that this provision is self-executing and determines the limit of a stockholder's liability. A casual reading of it will disclose that he is obligated only for liabilities accruing while he remains a stockholder. Any liability of the bank accrued either before he became a stockholder or after he ceased to be a stockholder, cannot be enforced against him. If a bank becomes defunct and goes into the hands of a receiver, it can make no contracts and incur no liabilities for which it or its stockholders may be held responsible. The rights and liabilities of creditors and debtors of an insolvent cor-

poration are fixed and determined as of the time of the appointment of a receiver. (*Hynes* v. *Illinois Trust & Savings Bank,* 226 Ill. 95.) Whatever charges and expenses are incurred after that time are not obligations of the bank, but are debts of the receivership.

Should a bank occupy a rented building, certain stockholders would be liable for all rent due at the time a receiver is appointed, but no matter how long the bank may be in liquidation and occupy the same premises, the stockholders would not be chargeable with any rent which accrued after the receiver was appointed. This is true with every other item of expense without exception. All debts, charges and expenses, including costs of administration, which accrue after the appointment of a receiver are charges against the receivership. The only obligations for which any stockholder is liable in any manner or form are those which the bank incurred while he was the owner of stock. For example, if a bank failed in 1930 and continued to occupy leased premises, no one could contend that a stockholder, who had disposed of his shares twenty years previously, should be compelled to contribute toward the rent which became due after the receivership. The bank could incur no obligation, and none could accrue against it after a receiver had been appointed.

A stockholder's liability in a defunct State bank is measured by the unsatisfied liability which accrued during the period of stock ownership, subject to the limitation that the stockholder's liability shall not exceed the par value of the stock held by him. In ascertaining the liability of an individual stockholder, the court in which the representative suit is pending must ascertain two primary facts: First, the aggregate amount of liability which accrued while the stockholder held his stock, and, second, the par value of the shares of stock so held by him. Without the existence of unsatisfied claims which accrued while he remained a stock-

holder, he is under no liability to the bank's creditors at all. *Burket* v. *Reliance Bank and Trust Co.* 366 Ill. 98.

What are the admitted facts in the instant case? Claims aggregating $105,872.45 were presented to the liquidating receiver and allowed by the Auditor of Public Accounts. The action of the receiver was later approved by the court. The Auditor's receiver realized in cash $102,173.52 from the assets of the bank. It will thus be seen that the assets of the bank lacked only $3698.93 of being sufficient to pay all of the debts and obligations of the bank which existed at the time the receiver was appointed.

The Farmers State Bank of Irvington had a capital stock of $25,000. A representative creditor's suit was instituted and the court fixed the respective liabilities of the stockholders. The receiver in that proceeding collected $24,916.33. After paying the costs, he turned over the remainder, $20,145.26, to the Auditor's receiver.

The Auditor paid seven dividends to the creditors, the last on July 3, 1936. This dividend paid, in full, all of the claims against the bank. It will thus be seen that a large portion of the amount turned over by the receiver in the creditor's suit was absorbed in liquidating claims and paying costs and charges. After the payment of all claims and charges in full, there remained in the hands of the Auditor's receiver cash, bonds and other assets, appraised at $13,433.07. This is the sum he seeks to distribute among the claimants, as interest. Such an order was entered and has been appealed from.

By what right the Auditor's receiver could use more than $3698.93, I am unable to observe. It is of no consequence to say that he paid the money he received from the receiver in the creditor's suit to the creditors. He had no right to use it at all except to the extent of $3698.93. This sum he could use for payment on claims but not for costs and expenses of receivership, or the payment of in-

terest on claims. Those charges were against the receivership and were in no sense an obligation of the bank and consequently there was no stockholder's liability for them. The statute (Ill. Rev. Stat. 1937, chap. 16½, sec. 11) authorized him to pay costs and expenses, including attorney's fees, but neither the statute nor the constitution makes obligations of that character a liability against a stockholder. They must be paid out of bank assets and not out of contributions from stockholders. Though it may be desirable that all creditors be paid in full, nevertheless, we ought not to do violence to the plain provisions of the constitution and subject stockholders to a liability not imposed upon them. In my view, the majority opinion does this very thing; therefore, I am constrained to dissent from it.

ORR and WILSON, JJ., concur in this dissenting opinion.