Thomas COLLINS, Plaintiff-Appellant,

v.

Clark O. MURRAY and William Evans, doing business as Inland Newspaper Supply Company of Kansas City, Missouri, a partnership, Defendants-Appellees.

No. 13630.

United States Court of Appeals Seventh Circuit.

Dec. 11, 1962.

Rehearing Denied Feb. 26, 1963.

John P. Forester, Chicago, Ill., Tenney, Sherman, Bentley & Guthrie, Chicago, Ill., of counsel, for plaintiff-appellant.

George F. Nichols, Dixon, Ill., for defendants-appellees.

Before DUFFY, KILEY, and SWYGERT, Circuit Judges.

KILEY, Circuit Judge.

This is a diversity suit by Collins for an accounting of commissions, wages, and expenses, with a counterclaim by defendants for an accounting of advances to plaintiff during his employment as their sales representative. The issues were referred to a Special Master. The District Court approved the Master's report, confirmed his findings, and entered the judgment recommended for plaintiff in the amount of $5,763.85.[1] Plaintiff has appealed, asserting the inadequacy of the judgment.

Defendants in 1952 were operating a used printing machine business in Kansas City, Missouri, buying and selling printing presses. In March, 1952, plaintiff, after conversations with defendant Evans, commenced employment with defendants' partnership. He was experienced in selling rotary and other printing presses and was engaged to locate, buy, and sell presses. After Collins had entered upon the work, a question arose about the rate of commissions to be paid upon sales of presses to be installed for the purchasers. Collins and defendant Murray exchanged several letters which led to a conference on July 30, 1952 between plaintiff and Evans and Murray. Collins worked until January 31, 1954. During that period, there is no indication that he asked for an accounting of his commissions and none that any accounting was given him by defendants. He brought this suit on May 14, 1954.

Plaintiff alleged an oral contract made about March 20, 1952 under which he was to receive, so far as pertinent here, a minimum commission of 10% of the *total amount of the purchase price*[2] of printing equipment sold by him. He also alleged a supplemental oral agreement made July 30, 1952 under which he was to be given ten dollars a day for subsistence and two dollars an hour for work in dismantling and erecting presses. Defendants admitted the 10% agreement, but denied that it was to be based on the gross sales price. They admitted the agreement as to subsistence and wages, with reservations as to the amounts claimed.

The Master decided that plaintiff did not prove the contract of March, 1952, as alleged. His decision is based upon the finding that the 10% was not to be paid upon the gross sales price of equipment to be installed or reconditioned, but upon *the sales price less the cost of dismantling, freight, reconditioning and installation.*[3] The question here is whether that finding, approved by the District Court after oral argument and the submission of briefs, is clearly erroneous.[4]

There was a conflict in the testimony of Collins and Evans on the question whether, at the initial March meeting, Evans orally promised Collins a 10% commission on the gross sales price. We think the correspondence between Collins and Murray shows that there was no meeting of the minds at the March discussion. Murray agreed to a 10% commission on gross sales price if Collins sold the "Davenport press" for $80,000. But he repeatedly refused to be-

1. The court also gave judgment for Evans in the amount of $693.00 upon a promissory note made by Collins. That judgment is not involved in this appeal.

2. Hereinafter referred to as gross sales price.

3. Hereinafter referred to as net sales price.

4. There is no controversy in this court about the findings with respect to the commission on presses located by Collins and purchased by defendants, or about the 10% commission upon his sales of presses which did not have to be installed or reconditioned in the customers' plants. After detailed findings with respect to disputed items, the Master credited plaintiff with a total of $27,767.33 in commissions, wages, and expenses, and credited defendant with advances of $22,003.48. Plaintiff's judgment was for the balance, $5,763.85. None of the findings of these amounts is challenged. The only point made by plaintiff is that the court failed to apply the 10% rate to the gross sales price; and that he is entitled to $17,445.41 instead of $5,763.85.

"strapped down" with a definite, inflexible 10% commission on gross sales price. He and Collins agreed that a conference between Evans, Murray and Collins should be held to discuss all of the problems concerning their business relationship.[5] The Master concluded, after hearing and reading the evidence, that defendant Evans had not bound the partnership in March, 1952, to pay 10% on the gross sales price of machinery sold by plaintiff.

■ The resolution of the conflicts in the testimony was the province of the Master. We think there is substantial evidence to support the Master's finding on this issue. We have no "definite and firm conviction that a mistake has been committed," United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1947), and we think the finding is not clearly erroneous.

A Chicago conference of the three men was held on July 30, 1952, to bring about a meeting of the minds on the question of the 10% rate on installed presses, and to discuss a drawing account against future commissions. In addition, wages, expenses and subsistence were discussed at that six hour meeting. Collins gave his version of the understanding reached at that meeting as to the 10% commission. He was contradicted by Evans and Murray. The Master accepted the version of the defendants. We cannot say he should have accepted Collins' version.

■ We see no merit in the contention that the Master, in applying the 10% rate on the net sales price, thereby made an agreement for the parties. The Master found that the agreement made was that testified to by defendants. Plaintiff contends that the defendants had the burden of proving that contract, and that the Master failed to require defendants to sustain that burden. There was some contrariety in defense testimony; nevertheless we think the Master's finding upon the contract has sufficient support in the record on the evidence produced by the defendants. We need not therefore discuss the question of where the burden of proof lay nor whether the Master failed to require defendants to sustain that burden. The cases cited on this point are not helpful.[6]

We have considered but need not discuss several subordinate arguments made by plaintiff on the proof and findings. They refer to matters we deem to be of no importance to the decision.

■■ The remaining questions concern the Master's disallowance of interest in the amount found due plaintiff from January 1, 1954 and his taxing the costs equally against the parties. Plaintiff concedes that, in both cases, it is a question of what is equitable and just in view of all the circumstances in the case. People ex rel. Barrett v. The Farmers State Bank of Irvington, 371 Ill. 222, 224, 20 N.E.2d 502, 504 (1938). In our opinion, plaintiff's arguments on these questions do not show an abuse of discretion.[7] Chemetron Corp. v. Perry, 295 F.2d 703 (7th Cir., 1961).

For the reasons given, the judgment is affirmed.

---

5. Collins wrote to Murray on July 12, 1952, as follows:
   "* * * there seems to be a need for a 3-way discussion * * * I sense certain basic disagreements [among the three parties] * * * it should not take long to face the fundamentals and define them * * *."

6. The facts here clearly distinguish, for instance, Lewy v. Standard Plunger Elevator Co., 218 Ill.App. 306, 314 (1920). It is true that the court there, in a fact situation strikingly similar to the one at bar, put the burden of establishing its version of the contract on the defendant-employer. But the court merely held that the defendant had not carried that burden with sufficient evidence.

7. Plaintiff argues, for example, that defendants have not paid his sales commissions, under any theory of what they should be, since he left their employ. But, as both the Master and appellees note, plaintiff did not, until the actual litigation was in progress, produce any accounting of the sums advanced to him by defendants for expenses.