* Motion for rehearing denied, with $25 costs, on April 12, 1946.
This is a step in proceedings begun by the Banking Commission of Wisconsin, hereinafter called the "commission," on the 14th day of April, 1941, seeking the advice of the court as a court of equity in the matter of the distribution of a fund deposited by the Fidelity Assurance Association of West Virginia with the treasurer of the state of Wisconsin. It appears that the Fidelity Assurance Association, a West Virginia corporation, hereinafter referred to as the "Association," as a condition of being permitted to do business within the state of Wisconsin, deposited certain securities with the state treasurer as required by sec. 215.38, Stats. It further appears that the association became insolvent and on April 11, 1941, at the instance of the insurance commissioner of the state of West Virginia, the attorney general of that state instituted a proceeding for the appointment of a receiver in the circuit court of Kanawha county; pursuant thereto the court appointed receivers who took over the cash and undeposited securities.
Under date of October 15, 1943, an order was entered in the circuit court for Dane county, authorizing a partial distribution to Wisconsin certificate holders. On April 3, 1944, a further preliminary order was entered. On or about the 22d day of June, 1944, H. Isaiah Smith and A.P. Hudson, West Virginia special receivers, filed a petition asking leave to intervene and making certain objections to the tentative order of April 3, 1944. At or about the same time, Edgar B. Sims, auditor and ex officio insurance commissioner of West Virginia, filed a similar petition. Under date of July 25, 1944, the commission filed a reply to the petition of the West Virginia receivers and the auditor and ex officio insurance commissioner of West Virginia.
Under date of July 18, 1944, certain facts were stipulated. A hearing was had and under date of April 27, 1945, an order was entered which denied the petition of the West Virginia receivers and the West Virginia auditor. The special receivers *Page 375 
and the auditor appealed from that part of the order which follows:
"(3) All such contract holders who have claims in accordance with paragraph 2 above [specifying the claimants eligible to participate in the Wisconsin fund] in the amount of the net cash surrender values of their contracts shall be allowed interest to be computed and paid on such claims at the rate of six per cent per annum from April 11, 1941.
"(4) That contract holders having claims to be allowed in Wisconsin in accordance with the foregoing are entitled to apro rata distribution of the funds comprising the Wisconsin deposit less the fees and expenses of these proceedings.
"(5) That any claim of the said West Virginia receivers and auditor and ex officio insurance commissioner of the state of West Virginia for the payment to them of the amount existing in said Wisconsin deposit fund over and above the amount of the aggregate net cash surrender values of contracts, held by claimants herein in accordance with this order, be denied, and the Banking Commission of Wisconsin be allowed and permitted to disburse the funds comprising said Wisconsin deposit in accordance with the terms and provisions of this order."
The commission attempted to secure a review of paragraph 2 of the order which follows:
"(2) That only those claimants who qualify within the provisions of paragraph 1 above, who had contracts which on April 11, 1941, had a net Cash surrender value thereto, that is, cash surrender value as of April 11, 1941, plus additional credits and advance payments and less any loans, with interest to April 11, 1941, shall have a claim against the deposit fund being administered by the Banking Commission of Wisconsin, such claimants to be allowed claims for one hundred per cent of the net cash surrender value of their respective contracts as of April 11, 1941."
A motion to dismiss the motion for review was granted (247 Wis. 619, 20 N.W.2d 638) and, no parties in interest having appealed, that part of the order is now final and conclusive. *Page 376 
The principal question to be determined upon this appeal is whether under the provisions of sec. 215.38, Stats., Wisconsin certificate holders shall in addition to the amount due them on their certificates be allowed interest on such sums after April 11, 1941, the date of the insolvency in accordance with the determination of the circuit court. A determination of this question will determine other questions presented.
Proceedings in Wisconsin were had under the provisions of ch. 215, Stats., entitled "Building and Loan Associations," which are made applicable to investment associations such as Association. Sec. 215.38 prohibits the transaction of business by a foreign corporation such as Association —
"unless such association shall have and keep on deposit with the state treasurer, in trust for the benefit and security of all its members in this state, $500,000 to be held in trust as aforesaid . . . until its contracts and obligations to persons and members residing in this state shall have been fully performed and discharged." *Page 377 
It was pursuant to the provisions of this section and sec. 215.395, Stats., that Association deposited with the state treasurer securities amounting to $2,728,648.69. On October 25, 1943, a fifty per cent dividend amounting to $1,103,431.97 was paid to resident certificate holders. At the present time, upon the basis laid down by the circuit court, there is still owing to Wisconsin certificate holders on the basis of net cash surrender value, $1,180,177.80. After payment of this amount to certificate holders at the time of the commencement of the insolvency proceeding, there would remain in the Wisconsin deposit fund a sum approximating $341,946.31. In concrete terms, the principal question is, Shall the Wisconsin certificate holders be paid interest out of the $341,946.31, or shall said sum be returned to the courts of West Virginia there to be administered in accordance with the laws of West Virginia? The determination of this question depends upon the construction of the applicable part of sec. 215.38.
There can be no doubt that the deposit fund stands for the exclusive security of Wisconsin certificate holders to the extent of surrender value as of April 11, 1941. Does it stand as security for any further payment? By the terms of the statute, the deposit shall stand as security until the Association shall have fully performed and discharged its contracts and obligations to persons residing in this state.
At what point can it be said that its contracts and obligations are fully performed and discharged? By reason of its insolvency Association is disabled from fully performing its contracts and obligations according to their several terms. It being impossible for Association to fully perform its contracts and discharge its obligations, there remains a claim upon its assets to the extent of the net surrender value of its contracts, and it was to secure the payment of that amount that the deposit was made. It was never contemplated or expected that the deposit was made to secure the full performance of Association's *Page 378 
contracts at their maturity. That is clearly indicated by the language of the sections already referred to. While the insolvency of Association does not discharge its contracts, it reduces the claim of the certificate holders upon the assets of the company to its pro rata share thereof, — in the present case the certificate holders' pro rata share of the deposit, — not exceeding the full amount of the claim of the certificate holder. When that claim is paid the contracts and obligations of Association are fully performed and discharged, for the reasons set out at length in In re Farmers Bank of LoneRock, ante, p. 269, 21 N.W.2d 410, decided January 11, 1946.
We are unable to discover any substantial difference in legal effect between the words "fully performed and discharged" and the words "paid in full," which were considered in the case of In re Farmers Bank of Lone Rock, supra. While the words "paid in full" were employed in a debenture and the words "fully performed and discharged" in a statute, they perform the same office, that is, they determine the extent of the claims of the depositors in the fund sought to be charged.
It is not necessary for us to reconsider the cases so recently given full consideration by this court. It is manifest that in this case there was a failure to distinguish interest as damages and interest as a contractual obligation. The trial court correctly held that on the day the Association became insolvent, it owed the certificate holders the net amount of the surrender value of outstanding certificates. Nowhere in the certificate or in the statute is there any provision for interest. While the amount which certificate holders were to be paid at maturity was to be derived from interest earned on moneys in the hands of the Association, there was no agreement that the right of the certificate holders was to be affected in any way by the amount of interest actually earned by the Association. Association was bound to pay the amount specified in the certificates according to their terms. Cases holding that in *Page 379 
liquidation proceedings persons who hold assets by way of pledge or mortgage can satisfy their claims including the interest agreed to be paid out of the pledged assets of the insolvent have no application to this case. Here there was no agreement to pay interest.
The claim for interest in this case is not based upon the terms of the contract. If interest is due it will be by way of damages and not to satisfy the contract. That any obligation that exists for interest under the facts of this case is imposed by law and not by contract is clear from the case of In reOconto County State Bank (1942), 241 Wis. 369,6 N.W.2d 353, 7 N.W.2d 602. In that case it was held that the certificate holders were entitled to interest on their contract from the date of insolvency not at the contract rate but at the legal rate. When a claim is allowed, the allowance in effect amounts to a judgment and thereafter it bears interest as such and all claims against the insolvent are entitled to interest only if there is a surplus after the payment of claims and then all claimants have equal proportionate rights in the surplus.
For the reasons stated, the trial court was in error in holding that Wisconsin claimants should be paid interest in full without regard to the rights of other claimants in the assets of the company.
It is argued that the West Virginia receivers and the auditor and ex officio insurance commissioner of West Virginia have no interest in the Wisconsin fund. This contention cannot be sustained. The deposit in Wisconsin is a part of the assets of Association and while Wisconsin certificate holders have a right to receive the net surrender value of their certificates as of the date of the insolvency, if there remains a surplus it belongs to Association. There is only one insolvent. Creditors of the Association are creditors whether they reside in Wisconsin or in sister states. While Wisconsin certificate holders are entitled under the terms of the deposit *Page 380 
to preferential treatment to the extent necessary to fully perform and discharge the contract and obligation of the Association, they do not have beyond that the right to preferential treatment as to damages.
By the Court. — Those parts of the order appealed from are reversed, and the case is remanded to the trial court with directions to enter an order directing the commission to pay. to Wisconsin claimants the net surrender value of their certificates as of April 11, 1941, and remit the surplus in the deposit fund to the proper authorities of West Virginia.