IN RE FIDELITY ASSURANCE ASSOCIATION: SMITH and others, Appellants, vs. BANKING COMMISSION and another, Respondents.*

*January 10—February 15, 1946.*

---

For the appellants there were briefs by *Koontz & Koontz* and *J. Campbell Palmer, III,* of Charleston, West Virginia, and *Robert M. Rieser* of Madison, attorneys for the West Virginia special receivers, and *Ira J. Partlow,* attorney general of West Virginia, attorney for Edgar B. Sims, auditor, and oral argument by *Mr. Palmer, Mr. A. B. Koontz,* and *Mr. Rieser.*

For the respondent Banking Commission there was a brief by *Sullivan & Lauritzen* of Milwaukee, attorneys, and the *Attorney General* and *James Ward Rector,* deputy attorney general, of counsel, and oral argument by *Rickard H. Lauritzen.*

Briefs *amicus curiæ* were filed by *Guy B. Brown,* of Baltimore, Maryland, counsel for the insurance commissioner of Maryland, and by *Barton E. Griffith* of Topeka, Kansas, Kansas ancillary receiver.

ROSENBERRY, C. J. The principal question to be determined upon this appeal is whether under the provisions of sec. 215.38, Stats., Wisconsin certificate holders shall in addition to the amount due them on their certificates be allowed interest on such sums after April 11, 1941, the date of the insolvency in accordance with the determination of the circuit court. A determination of this question will determine other questions presented.

Proceedings in Wisconsin were had under the provisions of ch. 215, Stats., entitled "Building and Loan Associations," which are made applicable to investment associations such as Association. Sec. 215.38 prohibits the transaction of business by a foreign corporation such as Association—

"unless such association shall have and keep on deposit with the state treasurer, in trust for the benefit and security of all its members in this state, $500,000 to be held in trust as aforesaid . . . until its contracts and obligations to persons and members residing in this state shall have been fully performed and discharged."

It was pursuant to the provisions of this section and sec. 215.395, Stats., that Association deposited with the state treasurer securities amounting to $2,728,648.69. On October 25, 1943, a fifty per cent dividend amounting to $1,103,431.97 was paid to resident certificate holders. At the present time, upon the basis laid down by the circuit court, there is still owing to Wisconsin certificate holders on the basis of net cash surrender value, $1,180,177.80. After payment of this amount to certificate holders at the time of the commencement of the insolvency proceeding, there would remain in the Wisconsin deposit fund a sum approximating $341,946.31. In concrete terms, the principal question is, Shall the Wisconsin certificate holders be paid interest out of the $341,946.31, or shall said sum be returned to the courts of West Virginia there to be administered in accordance with the laws of West Virginia? The determination of this question depends upon the construction of the applicable part of sec. 215.38..

There can be no doubt that the deposit fund stands for the exclusive security of Wisconsin certificate holders to the extent of surrender value as of April 11, 1941. Does it stand as security for any further payment? By the terms of the statute, the deposit shall stand as security until the Association shall have fully performed and discharged its contracts and obligations to persons residing in this state.

At what point can it be said that its contracts and obligations are fully performed and discharged? By reason of its insolvency Association is disabled from fully performing its contracts and obligations according to their several terms. It being impossible for Association to fully perform its contracts and discharge its obligations, there remains a claim upon its assets to the extent of the net surrender value of its contracts, and it was to secure the payment of that amount that the deposit was made. It was never contemplated or expected that the deposit was made to secure the full performance of Asso-

ciation's contracts at their maturity. That is clearly indicated by the language of the sections already referred to. While the insolvency of Association does not discharge its contracts, it reduces the claim of the certificate holders upon the assets of the company to its *pro rata* share thereof,—in the present case the certificate holders' *pro rata* share of the deposit,—not exceeding the full amount of the claim of the certificate holder. When that claim is paid the contracts and obligations of Association are fully performed and discharged, for the reasons set out at length in *In re Farmers Bank of Lone Rock, ante,* p. 269, 21 N. W. (2d) 410, decided January 11, 1946.

We are unable to discover any substantial difference in legal effect between the words "fully performed and discharged" and the words "paid in full," which were considered in the case of *In re Farmers Bank of Lone Rock, supra.* While the words "paid in full" were employed in a debenture and the words "fully performed and discharged" in a statute, they perform the same office, that is, they determine the extent of the claims of the depositors in the fund sought to be charged.

It is not necessary for us to reconsider the cases so recently given full consideration by this court. It is manifest that in this case there was a failure to distinguish interest as damages and interest as a contractual obligation. The trial court correctly held that on the day the Association became insolvent, it owed the certificate holders the net amount of the surrender value of outstanding certificates. Nowhere in the certificate or in the statute is there any provision for interest. While the amount which certificate holders were to be paid at maturity was to be derived from interest earned on moneys in the hands of the Association, there was no agreement that the right of the certificate holders was to be affected in any way by the amount of interest actually earned by the Association. Association was bound to pay the amount specified in the certificates according to their terms. Cases holding that in

liquidation proceedings persons who hold assets by way of pledge or mortgage can satisfy their claims including the interest agreed to be paid out of the pledged assets of the insolvent have no application to this case. Here there was no agreement to pay interest.

The claim for interest in this case is not based upon the terms of the contract. If interest is due it will be by way of damages and not to satisfy the contract. That any obligation that exists for interest under the facts of this case is imposed by law and not by contract is clear from the case of *In re Oconto County State Bank* (1942), 241 Wis. 369, 6 N. W. (2d) 353, 7 N. W. (2d) 602. In that case it was held that the certificate holders were entitled to interest on their contract from the date of insolvency not at the contract rate but at the legal rate. When a claim is allowed, the allowance in effect amounts to a judgment and thereafter it bears interest as such and all claims against the insolvent are entitled to interest only if there is a surplus after the payment of claims and then all claimants have equal proportionate rights in the surplus.

For the reasons stated, the trial court was in error in holding that Wisconsin claimants should be paid interest in full without regard to the rights of other claimants in the assets of the company.

It is argued that the West Virginia receivers and the auditor and *ex officio* insurance commissioner of West Virginia have no interest in the Wisconsin fund. This contention cannot be sustained. The deposit in Wisconsin is a part of the assets of Association and while Wisconsin certificate holders have a right to receive the net surrender value of their certificates as of the date of the insolvency, if there remains a surplus it belongs to Association. There is only one insolvent. Creditors of the Association are creditors whether they reside in Wisconsin or in sister states. While Wisconsin certificate holders are entitled under the terms of the deposit

to preferential treatment to the extent necessary to fully perform and discharge the contract and obligation of the Association, they do not have beyond that the right to preferential treatment as to damages.

*By the Court.*—Those parts of the order appealed from are reversed, and the case is remanded to the trial court with directions to enter an order directing the commission to pay to Wisconsin claimants the net surrender value of their certificates as of April 11, 1941, and remit the surplus in the deposit fund to the proper authorities of West Virginia.