In re Liquidation of Oconto County State Bank: Federal Deposit Insurance Corporation, Respondent, vs. Falk and others, Appellants.

*March 14—April 14, 1944.*

246

For the appellants there were briefs by *Lehner & Lehner, Adolph P. Lehner,* and *Howard N. Lehner,* all of Oconto Falls, and oral argument by *Adolph P. Lehner.*

For the respondent the cause was submitted on the brief of *G. F. Clifford* of Green Bay, *Francis C. Brown* of Washington, D. C., and *John H. Russell* of Chicago, Illinois, attorneys, and *James M. Kane* and *John S. Cavanaugh,* both of Chicago, Illinois, of counsel.

MARTIN, J.   On the former appeal, on rehearing the court said, page 377:

"The instant petition states a case for allowance of some interest even if the six per cent demanded is not allowable. At any rate the question of what interest is allowable has not been adequately briefed. . . . In this situation, we treat the opinion heretofore filed as merely holding that some interest is allowable and leave the precise basis of the allowance to be determined by the trial court upon the facts shown by the proofs or the stipulation of the parties."

The respondent's claim is based on 12 USCA, sec. 264 (1), (7), which provides that:

. "In the case of a closed national bank, . . . the corporation, [FDIC] upon the payment of any depositor, . . . shall be subrogated to all rights of the depositor against the closed bank to the extent of such payment.   In the case of any other

closed insured bank, the corporation shall not make any payment to any depositor until the right of the corporation to be subrogated to the rights of such depositor on the same basis as provided in the case of a closed national bank under this section shall have been recognized either by express provision of state law, by allowance of claim by the authority [commission] having supervision of such bank, by assignment of claims by depositors, or by any other effective method. In the case of any closed insured bank, such subrogation shall include the right on the part of the corporation to receive the same dividends . . . as would have been payable to the depositor on a claim for the insured deposit: . . . *Provided,* that the rights of depositors and other creditors of any state bank shall be determined in accordance with the applicable provisions of state law."

Sec. 220.082, Wis. Stats., declares that the Federal Deposit Insurance Corporation's rights to subrogation in the case of a closed insured state bank are the same as its rights in the case of a closed insured national bank. Upon payment of the depositors, the respondent took from each insured depositor an assignment which contained the following provision:

"For the purpose of subrogating the Federal Deposit Insurance Corporation to all of claimant's rights against said closed insured bank arising out of the insured deposit in the amount shown above, claimant hereby assigns, transfers and sets over unto said corporation all claims against said closed insured bank and its stockholders arising out of said insured deposit, together with all evidences of such indebtedness held by claimant. Claimant hereby acknowledges receipt from the said corporation of the amount of said insured deposit."

The court found that the amount of demand deposits at the time the bank closed were $161,582.79, and that the savings and time deposits were $160,049.77. The savings and time deposits bore interest at two per cent.

Appellants concede that when the bank closed its doors on January 4, 1939, such was tantamount to refusal to pay, and

that demand depositors were entitled to six per cent interest from that date until payment was made. There are, therefore, only two questions for our consideration: (1) The rate of interest allowable on the savings deposits and certificates of deposit; and (2) the date from which interest should be computed.

Appellants contend that after the bank suspended business and went into liquidation interest should be allowed on the "time" deposits at the contractual rate of two per cent, not only to the maturity date of the respective deposits but until they were repaid. Appellants' argument proceeds upon the theory that the claims of the depositors and the Federal Deposit Insurance Corporation, as the assignee of the insured depositors, when allowed by the circuit court were tantamount to judgments, and as such bear interest at the contractual rate. This contention was definitely rejected on the former appeal. See *In re Oconto County State Bank, supra,* page 375.

The trial court, in allowing interest at six per cent on all deposits from the date of the closing of the bank, based its decision on *People v. Merchants' Trust Co.* (1907) 187 N. Y. 293, 79 N. E. 1004; *Bates v. Farmers Sav. Bank* (1942), 231 Iowa, 1151, 3 N. W. (2d) 517; *Douglass v. Thurston County* (9th Cir. 1936), 86 Fed. (2d) 899–910; *Merrill v. National Bank of Jacksonville* (1899), 173 U. S. 131, 19 Sup. Ct. 360, 43 L. Ed. 640. In *People v. Merchants' Trust Co., supra,* page 298, the court said:

"The only other question which we are called upon to consider is that pertaining to the rate of interest that should be allowed after the appointment of the receiver. After the receiver had taken possession of the assets of the company under such appointment, as we have seen, the corporation became powerless to carry out its contracts with the depositors to repay their money to them upon demand. The depositors thereby had their right of withdrawal and payment taken from them. The company, owing to its inability to pay, became chargeable with a breach of its contracts, thus terminating

its right under the existing contracts and investing its depositors with all the rights given by law to persons whose contracts have been broken. To continue the interest at the *contract rate* would be manifestly unjust to the creditors, for the rates allowed under the contracts varied, as we have seen, from two to four per cent, and it would, therefore, favor one class at the expense of the other. We think, therefore, that when the contracts with creditors were broken by the defendant becoming insolvent and the appointment of a receiver, so that it was unable to perform its agreements, *the legal rate of interest became the rate to which all the creditors were thereafter entitled,* and it should be paid by the receivers if the assets are sufficient. It consequently follows that in an action brought by the attorney general to wind up the affairs of an insolvent bank, that interest at the contract rate should be allowed and credited upon the accounts of its creditors to the date that the receiver took possession of its assets; that thereafter interest is not allowable as between the creditors themselves, but is allowable against the corporation; *and if the assets are sufficient after payment of the principal of the indebtedness, as established at the time the receiver took possession, the interest should be paid at the legal rate before the distribution of the surplus to the stockholders."* To same effect are the cases above cited.

3 Michie, Banks and Banking, p. 501, sec. 220, states the rule as follows:

"Interest at the contract rate should be credited on the accounts of creditors to the date the receiver took possession of the bank's assets, and thereafter interest is not allowable as between the creditors themselves, but is allowable against the bank, and, if the assets are sufficient for the payment of the principal indebtedness as established at the time the receiver took possession, *interest should be paid at the legal rate before distribution of the surplus to the stockholders."* See cases under notes 97 and 98.

In 7 Am. Jur. p. 287, sec. 407, it is stated:

"The effect of the suspension and declared insolvency of a bank is to make its deposits due and actionable, and a depositor

then becomes entitled to interest on his deposits from the date of such suspension and declared insolvency. The rate of interest recoverable in such a case is the legal rate, and a recovery is not limited to the amount which the bank was accustomed to pay on time deposits." To same effect see 7 C. J. p. 741, sec. 518, note 51; *Hackney v. Hood* (1932), 203 N. C. 486, 166 S. E. 323.

In *Elliott v. First Inland Nat. Bank of Pendleton* (D. C. 1940), 32 Fed. Supp. 839, the court said:

"The rule seems to be, both by long administrative interpretation and judicial decision, that where a bank suspends and does not resume normal business, interest runs from date of suspension. *Richmond v. Irons*, 121 U. S. 27, 64, 7 S. Ct. 788, 30 L. Ed. 864; *Cronkleton v. Ebmeier*, 8 Cir., 38 F. (2d) 748, 750.

"Interest-bearing deposits, time and savings, bearing the contract rate of four per cent, and noninterest-bearing demand deposits, are involved in the present case. The authorities support the proposition contended for by the receiver—that interest on the time and savings deposits should be computed to the date of closing at the contract rate. *American Nat. Bank of Arkansas City, Kan. et al. v. Williams*, 8 Cir., 101 F. 943—thereafter the total should bear interest at the same rate (the local statutory rate on judgments) as the demand deposits."

In *Stein v. Delano* (3d Cir. 1941), 121 Fed. (2d) 975, the circuit court of appeals, third circuit, held that where administration of the assets of a New Jersey national bank in liquidation by a receiver resulted in the full payment of creditors, with a balance remaining in the hands of the receiver, the creditors were entitled to have the balance applied to pay interest from the date when insolvency was declared, as against the contention of the stockholders who had been compelled to pay superadded liability that they were entitled to a return of what was left of their assessment. The court further held that where assets remained in the hands of the receiver after payment of the principal of claims in full, they should be

applied to the payment of interest on claims from the date when insolvency was declared, the interest to be paid at the legal rate prescribed by the New Jersey statute. At page 978 the court said:

"The delay in payment is not the act of the debtor but is an act of the law for the mutual benefit of all the creditors. In the case of claims bearing different rates of interest, it would be inequitable to permit the running of interest to increase the proportion of the assets to which some of the creditors are entitled at the expense of other creditors while the estate is in the process of administration."

In 24 Op. Atty. Gen. 503 (1935) the attorney general advised the banking commission that the creditors of a closed bank are entitled to interest upon their claims in the event that the assets of the bank are sufficient to pay their claims in full, and that interest should be computed from the date of insolvency at the legal rate of six per cent, under sec. 115.04, Wis. Stats. See cases there cited.

"There are many cases wherein the insolvency of the corporation and the appointment of a receiver for its assets, is held to be an anticipatory breach by the corporation of its executory contracts, whether the appointment be voluntary or involuntary on the part of the corporation. This is because the appointment of a receiver takes the business and active management of the corporation out of the hands of the directors and prevents the company from carrying out its executory contracts." 29 Yale Law Journal, 483. See cases cited in note 7.

However, the general rule treats the closing of the bank and the appointment of a liquidator as a breach of the bank's contracts with its depositors, both as to demand and time deposits; and its depositors are entitled to interest at the legal rate of six per cent, under sec. 115.04, Wis. Stats., from the date of the closing of the bank. The respondent, having promptly paid the claims of depositors when the bank closed,

under its subrogation agreements is entitled to interest at the legal rate of six per cent from January 4, 1939, to the date of the repayment of the principal amount.

*By the Court.*—Order affirmed.