IN RE FARMERS BANK OF LONE ROCK: FEDERAL DEPOSIT INSURANCE CORPORATION, Appellant, vs. BANKING COMMISSION and others, Respondents.

*December 6, 1945—January 11, 1946.*

For the appellant there were briefs by *William Ryan* of Madison, and oral argument by *Mr. Ryan* and *Mr. John H. Russell* of Chicago, Illinois.

For the respondent Reconstruction Finance Corporation there was a brief by *Lee Walker* and *R. J. Thompson,* both of Chicago, Illinois, and *Glenn D. Roberts* of Madison, and oral argument by *Mr. Roberts* and *Mr. Thompson.*

*Harry E. Carthew* of Lancaster, for the respondent B debenture holders, except Joe Murray.

WICKHEM, J. The facts in this case are not in dispute. The Farmers Bank of Lone Rock, Wisconsin, hereinafter referred to as the "bank," is a corporation existing under the laws of Wisconsin. Federal Deposit Insurance Corporation, an insurance corporation, hereinafter referred to as "FDIC," and Reconstruction Finance Corporation, hereinafter referred to as "RFC," are corporations organized and existing by virtue of acts of congress. The Banking Commission of Wisconsin, hereinafter referred to as the "commission," took possession of the bank for purposes of liquidation on October 2, 1942, and the affairs of the bank have since been substantially liquidated. The principal of all deposits and all claims of other creditors existing against the bank as of the time its assets were

taken for liquidation have been paid, except principal and interest on the A and B debentures heretofore referred to and interest upon the payments made by FDIC and upon its claims of certain other creditors. All expenses of liquidation have been paid except current expenses, and there remains in the hands of the Banking Commission cash in the amount of $27,-147.85, and unliquidated assets in the amount of $6,946.20, or a total of $34,094.05. The bank was insured by FDIC up to the amount of $5,000 for each deposit. After the Banking Commission took possession, FDIC, pursuant to law, paid the insured depositors of the bank the full amount of their insured deposits as of the date of taking possession. The aggregate sum was $448,135.63. FDIC received from each depositor a combination receipt and assignment of claim and thereupon filed with the Banking Commission its claim against the assets of the bank for the total sum paid. The claim of FDIC was allowed by the Banking Commission and thereafter FDIC was fully repaid the amount of its outlay. On or about October 5, 1943, FDIC demanded the sum of $24,406.44 as interest at the legal rate of six per cent on its general claim computed from the date of taking possession of the bank until repayment of this sum to FDIC. This demand was neither allowed nor rejected by the Banking Commission.

We now come to the competing claimants—the holders of the A and B debentures. On or about June 12, 1934, RFC purchased from the bank for $15,000 an instrument known as interest debenture A registered, hereinafter referred to as the A debenture, and is now the owner and holder of this debenture. No part of the principal and no interest subsequent to August 1, 1942, has been paid. On or about February 1, 1935, the bank received a total of $10,500 from certain individuals in different amounts and the bank caused to be executed to each of these an instrument known as "income debenture class 'B'—Interest Bearing," hereinafter called "B debentures." With one small exception, no part of the principal and no interest subsequent to August 1, 1941, has been paid.

The question is whether the A and B debentures are entitled to be paid the principal of their claims, or as the trial court determined, the principal with interest to the date of payment, before any interest is to be paid to FDIC as subrogee of depositors.

Since considerable argument is based upon provisions of the debentures themselves, it will be convenient to set out here the material portions of these instruments. The A debenture contains in clauses 11 and 12 the following provisions:

"11. Subordination.—The obligations of the bank evidenced by the debentures shall be junior and subordinate to all obligations of the bank to its depositors and all other creditors (except the owners or holders of indebtedness subordinated to the debentures as to payment of principal and interest) in that no payment of principal of or interest on any of the debentures shall be made if, after giving effect to such payment, the aggregate fair value of all assets of the bank would be less than the aggregate of its liabilities, excluding, however, from such liabilities the debentures, any indebtedness subordinated as aforesaid, surplus, undivided profits, and capital stock of any class.

"12. Liquidation.—In case of any receivership, conservatorship, liquidation, dissolution, or winding up of the bank, whether voluntary or involuntary, all depositors and other creditors of the bank (except the owners or holders of indebtedness subordinated to the debentures as to payment of principal and interest) shall be entitled to be paid in full before any payment shall be made on account of principal of or interest on the debentures. After payment in full of all sums owing to such depositors and creditors, the registered holders of the debentures at the time outstanding shall be entitled to be paid ratably, · according to the aggregate principal amount of the debentures held by them, respectively, from all the remaining assets of the bank (including the proceeds of all assessments, penalties, judgments, and other charges against the holders of capital stock of the bank of any class), until payment of the principal amount of such debentures, plus accrued and unpaid interest thereon to the date of payment, before any payment or other distribution, whether in cash, property, or otherwise, shall be

made on account of any indebtedness subordinated as aforesaid, or on account of any capital stock of the bank of any class."

The B debentures contain in clauses 9, 10, and 11 subordination clauses substantially like those in the A debenture, except that the B debentures are specifically subordinated to the A debenture, both as to principal and interest down to the date of payment of the A debenture.

The argument of appellant may thus be summarized: The depositors under the doctrine of *In re Oconto County State Bank,* 245 Wis. 245, 14 N. W. (2d) 3, and *In re Oconto County State Bank,* 241 Wis. 369, 6 N. W. (2d) 353, 7 N. W. (2d) 602, are entitled to interest at the legal rate from the date of closing the bank. FDIC, by the terms of the assignment, exacted of each depositor, as well as by the provisions of the statutes, is subrogated to all of the rights of the depositors. The rights of the A and B debentures are specifically subordinated to those of the depositors and creditors. It is claimed to follow that the rights of FDIC to interest are superior to those of RFC or B debentures to interest, principal, or both.

In considering the various contentions made upon this appeal, we think that we must start with the well-established proposition that FDIC stands in the same position and is entitled to the same rights and privileges as the depositors whose claims it insured and paid. *In re Oconto County State Bank, supra,* and *In re Oconto County State Bank, supra.* See also *In re Anchor State Bank,* 234 Wis. 261, 291 N. W. 329. There is some argument in the briefs to the effect that because FDIC charges a premium for insuring deposits it is somehow relegated to a position inferior to that of the depositors whose subrogee it is. We are satisfied that this argument is not sound. Whatever differences there are between FDIC and ordinary subrogees arise from statutory provisions designed to protect the solvency of FDIC, and the notion that by accepting a premium in accordance with statutory provisions having this purpose its standing in a court of equity is somehow diminished, is a

wholly unjustified underestimate of the place of FDIC in the banking setup. It follows from the foregoing that FDIC has all of the rights that the depositors would have had, had the principal of their claims been paid directly by the assets of the bank and not by FDIC.

As between FDIC and the stockholders of the bank, FDIC is clearly entitled to interest at the legal rate from the time of the closing of the bank to the time when repayment was made to it. *In re Oconto County State Bank, supra,* and *In re Oconto County State Bank, supra.*

The next question has to do with the nature of this right to interest from and after the closing of the bank. It is asserted by FDIC that the interest is an incident to the debt, a part of it, and not merely allowed out of surplus as against the stockholders by way of damages. Respondents contend that the principal and interest due any creditor up to the time of the closing of the bank constitute his debt, and that interest thereafter is allowed only out of surplus and constitutes merely legal damages for the bank's default. It is further contended that under the general rules applicable to bank liquidation, all principal claims are to be paid out of the assets before the item of interest is considered, and that as between unsecured creditors, the interest is prorated out of the surplus without regard to the fact that some of the unsecured creditors have a priority. As authority for its position, appellant cites *In re Oconto County State Bank,* 241 Wis. 369, 6 N. W. (2d) 353, 7 N. W. (2d) 602, to the effect that interest is allowable in this state as incident to the claims of depositors in the bank liquidation. An examination of this opinion, as well as the opinion in the same case reported in 245 Wis. 245, does not support this conclusion. In the first *Oconto Case* the court relies strongly on *Federal Deposit Ins. Corp. v. Citizens State Bank of Niangua* (8th Cir.), 130 Fed. (2d) 102. This court points out (p. 373):

"There, as here, it was contended that the provision here involved 'prohibits the corporation from receiving interest as a

liquidation incident, and entitles it to reimbursement only for the sum which it has paid out, without the right to any interest, even though there is a surplus available for that purpose.' "

The federal court in the case quoted from, and this court in the *Oconto Case,* simply held that interest could properly be allowed in liquidation as an incident to a claim in liquidation. The emphasis is upon the liquidation and the incidence is to the claim in liquidation. That this is true is evidenced by the holding in the second *Oconto Case,* to the effect that interest from the date of closing in bank liquidation is at the legal rate rather than at the contracted rate. There is no reason, therefore, to conclude that the doctrine of the *Oconto Cases* is not consistent with the general rule in bank-liquidation cases, which is to the effect that all of the money due for principal with interest to the date of the closing of the bank is to be paid out of the assets before the item of interest accruing as damages after the date of closing of the bank is considered, and that as between those persons who have no secured position, the interest is prorated without regard to the fact that some of the unsecured creditors have a priority. *White v. Knox,* 111 U. S. 784, 4 Sup. Ct. 686, 28 L. Ed. 603; *Federal Deposit Ins. Corp. v. Department of Financial Institutions,* 113 Ind. App. 14, 44 N. E. (2d) 992; *Jamison v. Federal Deposit Ins. Corp.* (5th Cir.) 149 Fed. (2d) 199; *People v. American Loan & Trust Co.* 172 N. Y. 371, 65 N. E. 200; *People v. Merchants' Trust Co.* 187 N. Y. 293, 79 N. E. 1004.

It is contended by appellant that the doctrine of these cases was specifically rejected in *Thomsen v. Cullen,* 196 Wis. 581, 592, 219 N. W. 439, but a careful analysis of that decision convinces us that this is not true. That case involved an operating receivership of an industrial concern, and the question was whether interest beyond the date of receivership was properly allowed by the court on first and second mortgages in accordance with their terms. We shall not consider whether the

fact that this was an operating receivership was material to the interest question. The distinction between the *Thomsen Case* and this is that in the *Thomsen Case* the court was dealing with secured claims. Where a creditor by exacting security has withdrawn that security from the general assets until his debt is paid the general rule permits him to collect interest and principal down to the date of payment, so long as he can secure such payments from the security, and that is the rule applied in the *Thomsen Case.* The court cited the New York case of *People v. American L. & T. Co.,* but did not repudiate it. It distinguished this and other cases following the New York rule by stating that these cases deal with the right of preferred claimant to interest upon his claim presented in receivership proceeding instituted to wind up a corporation. It pointed out that such claimants have no specific lien upon the assets and their situation is quite different from that of the secured claimant. This court said: "The idea that stockholders and subsequent creditors can suspend a mortgagee's right to interest under his contract by bringing about a receivership of the corporation does not accord with one's sense of justice. Where the claims against an insolvent estate are of the same rank, or where they are not liens upon the assets but mere preferred claims, a different rule seems to prevail, although in such cases the rule is not uniform." This distinction was recognized by this court in *Banking Comm. v. First Wisconsin Nat. Bank,* 234 Wis. 60, 112, 290 N. W. 735. In this case the bank had a secured claim and there was objection to allowing interest on this claim until all creditors had been paid the full amount of their claims with interest to the time of insolvency. This court conceded the existence of the rule but asserted that it was not applicable to a case involving a secured creditor. This court said:

"These cases involve creditors, secured or unsecured, who seek to have interest allowed out of the general estate held for distribution to the creditors."

The court cited *Ticonic National Bank v. Sprague,* 303 U. S. 406, 413, 58 Sup. Ct. 612, 82 L. Ed. 926, to the effect that a secured creditor can enforce his lien against his security where there is sufficient to cover both interest and principal until his claim for both is satisfied. It will be noted that the operation of this doctrine recognized by both the *Banking Commission* and the *Thomsen Cases* assumes that the security will be sufficient to pay interest and principal. If it is not, and there is interest left unpaid, the secured creditor in so far as he seeks to have the surplus of general assets applied to his claim, must share *pro rata* with the unsecured claimants.

We conclude that there is nothing in the Wisconsin cases contrary to the general liquidation rule recognized by the weight of authority and that the trial court properly so held.

Two further contentions by appellant require brief mention. It is contended that both the A and B certificates have by their own contracts specifically subordinated themselves to the claims of the depositors, including interest on such claims after the date of closing. We conclude that the language of the instruments does not support this contention. In the light of the foregoing conclusions, and the absence of a specific reference to interest after the date of closing, it must be concluded that the subordination contemplated was to claims as they existed at the time of the closing of the bank. It will be noted that in the B certificates, when further subordination was intended, it was specifically mentioned that the certificates were subordinated, both as to interest and principal, down to the time of payment to the A debenture. It is plain to us from the instrument that the A certificate holder subordinated itself only to the claims of the depositors as they existed on the day of closing the bank. Hence, it cannot be said that it waived its right to the prorating of interest considered as damages. In the latter part of the opinion we discuss and dispose of the question as to the power of the bank by contract with the holder of the A certificate, RFC, in liquidation proceedings, and hold

that they have no such power, but we discover in the instruments no purpose or intent to yield any rights to interest on liquidation.

Appellant also argues that in spite of the form of the debenture, the contribution of RFC and the holders of the B debentures was to the capital of the bank, and in some jurisdictions the contribution could be evidenced by some form of capital stock. The conclusion urged is that this so operates on the equities of the situation as to require their subordination to the same extent as stockholders are subordinated, thus entitling FDIC, as in the *Oconto Cases,* to have interest accruing after the closing of the bank before any payments of principal and interest are made upon the debentures. We cannot agree to this contention. The form of the instruments establishes a debtor-creditor relationship; the instruments were given to support the solvency of the bank; in the case of RFC, at any rate, the support was given in accordance with statutory purposes, and appellant's argument does not impress us any more than did the argument of respondents, that FDIC is nothing more than a species of insurance company exacting a premium and entitled to no special consideration for that reason.

It is our conclusion from the authorities that the principal upon the A and B debentures, and the interest on these instruments down to the closing of the bank, should be paid before interest is paid to FDIC. We are of the view, however, that the trial court was in error in holding that either the A or B debentures was entitled to interest down to the date of payment of their claims in preference to the right of FDIC to interest on its claim. The proper rule is that the surplus after the payments above referred to should be prorated irrespective of priorities. Respondents' contention in this respect violates the very rule as to interest in liquidation proceedings contended for by them.

It is asserted that the contract constituting the A debenture being a legal contract, authorized by the bank directors, estab-

lishes the rights of the A debenture holder, RFC, to this interest. We are of the view that neither the bank directors nor the debenture holders have the power to contract away the liquidation rights of the depositors. It is our conclusion, therefore, that as between FDIC on the one hand, and the A and B debenture holders on the other, whatever remains after paying the principal of the A and B debentures, with interest down to the date of the closing of the bank, is to be prorated and no one is to have priority over the other.

There remains a question, however, as between the A and B debentures. The B debentures are by their terms specifically subordinated to the A debenture, both as to principal and interest down to the time of payment of the A debenture. We see no reason why the holders of the B debentures may not yield by contract their rights to have the surplus applied to interest accruing after the closing of the bank and this they specifically did. This is quite different from the situation between the holder of the A debenture and FDIC. It is one thing for the holder of the A debenture to contract with the directors of the bank for superior rights in liquidation. It is quite another thing when the holders of the B debentures specifically contract away their rights in liquidation and subordinate them to the A debenture. The latter contract must be given effect.

It is our conclusion that the order entered, so far as the matters here concerned are involved, should be so drafted as, (1) to secure to the holders of the A and B debentures payment of the principal on these debentures and interest on each up to the time of the closing of the bank before the claim of FDIC to interest is paid; (2) after allocation of a sum sufficient to meet the foregoing items of interest and principal, to preserve the rights of all creditors without reference to the respective priorities of their principal claims, to a *pro rata* share in the surplus to be applied to interest accruing after the date of the bank closing; (3) to preserve to the holder of the A debenture its priority over the B debenture, both as to principal and

interest down to the date of payment. This can be accomplished, (1) by setting aside the amount needed to pay principal and interest on the debentures down to the time of the closing of the bank; (2) calculating the amount of interest as damages due to the holders of B debentures; and (3) then applying all sums allocated to the B debentures to the payment of principal on the A debenture, together with interest thereon down to the time of the actual payment of the A debenture. Such a procedure will protect the priority and *pro rata* rights of all parties.

*By the Court.*—The portion of the order appealed from is reversed, and cause remanded with directions to enter an order in accordance with this opinion.