Rex M. **HUSTON**, Trustee, Petitioner,

v.

**FEDERAL DEPOSIT INSURANCE CORPORATION in its capacity as receiver, Respondent.**

No. C–8147.

Supreme Court of Texas.

Dec. 31, 1990.

---

OPINION ON MOTION FOR
REHEARING

MAUZY, Justice.

The Court's prior opinion delivered on April 18, 1990 is withdrawn and the following substituted. We overrule the respondent's motion for rehearing.

This case involves the issues of (1) whether final orders resolving discrete issues during the course of a state bank receivership must be timely appealed or be

waived; and (2) whether interest may be paid on the claims of the creditors of a failed state bank. The court of appeals held that the Federal Deposit Insurance Corporation (F.D.I.C.) could wait to appeal the trial court's order denying interest to the claims of the bank's creditors until the trial court rendered its final termination order of the receivership. 757 S.W.2d 912. We hold that orders which resolve discrete issues in connection with any receivership are appealable. However, because it would be unfair to apply this decision retrospectively as discussed herein, we reverse the judgment of the court of appeals and affirm the trial court's judgment denying interest claims of the estate's creditors.

The Bank of Woodson was closed by the Texas Department of Banking on March 1, 1982. The F.D.I.C. accepted appointment as receiver of the insolvent bank on March 11, 1982. The inventory of assets which was filed by F.D.I.C. on March 12, 1982, shows total assets of $3,168,192.75 and liabilities of $3,470,089.54. A surplus was later created, however, by the recovery of more than $600,000.00 from a banker's blanket bond that the bank had procured insuring it against losses it suffered by reason of dishonest or improper actions of former bank officers and employees.

Upon receipt of the funds from the bond claim, the F.D.I.C. as receiver paid the final principal owing to the creditors of the bank on June 16, 1986. Immediately thereafter, on July 7, 1986, Huston filed an application to compel a final dividend, report and disposition of assets. On Sept. 29, 1986, the receiver filed its final accounting as of Aug. 31, 1986, and a hearing was held to determine who was entitled to the surplus of approximately $298,103.00.

On Jan. 15, 1987, the trial court rendered an order on F.D.I.C.'s request, holding that interest was not payable to creditors of the bank. No appeal was timely pursued from that order. Six months later, the trial court concluded this receivership proceeding pursuant to the Texas state bank receivership statutes [TEX.REV.CIV.STAT. ANN. arts. 342–801 to 342–816], and on July 21, 1987, rendered its termination order.

■ We hold that a trial court's order that resolves a discrete issue in connection with any receivership has the same force and effect as any other final adjudication of a court, and thus, is appealable. *See Gossett v. Griffin & Kimbrough,* 107 S.W.2d 1115 (Tex.Civ.App.—San Antonio 1937, writ dism'd); *In re: Marietta State Bank,* 35 S.W.2d 767 (Tex.Civ.App.—Texarkana 1931, no writ); and *Chapman v. Guaranty State Bank,* 267 S.W. 690 (Tex. Comm'n App.1924, opinion adopted). All three of these cases involved trial court orders during the course of the liquidation and receivership of a failed state bank. Nevertheless, the orders were considered to have the same force and effect as any other final adjudication.

In *Gossett,* a law firm sought to collect on a claim against a failed bank which was in the hands of the state banking commissioner for liquidation. The commissioner allowed only a fraction of the claim. The law firm challenged the commissioner's decision by intervening in the receivership. Following trial, the court rendered judgment in favor of the law firm for the full amount of its claim. On appeal the commissioner argued that the trial court order awarding recovery to the law firm, "without also disposing of all the other matters encompassed in the liquidation proceeding, was not a final judgment." *Gossett,* 107 S.W.2d at 1116. The court of appeals rejected this argument. Citing *Marietta State Bank,* the *Gossett* court held that the trial court order allowing recovery of the law firm's claim was a final judgment, even though it did not conclude the receivership and liquidation proceedings.

In *Marietta State Bank,* the banking commissioner presented a list of administrative expenses incurred in connection with the supervision and liquidation of the bank for trial court approval. Certain creditors of the bank filed a protest with the court challenging the expenses as excessive. After hearing evidence on the issue, the court held that the claimed expenses were excessive. Thereafter, the

banking commissioner appealed the court's order. As an initial matter, the appellate court held that the trial court's order was a final judgment which was appealable. *Marietta State Bank*, 35 S.W.2d at 769.

In *Chapman*, the banking commissioner as liquidator of a failed state bank, negotiated a sale of a large part of the bank's assets. The commissioner presented the proposed sale to the court for approval as required by statute. The court confirmed the sale. Thereafter, the purchaser of the assets attacked the sale in a collateral proceeding. The trial court granted the purchaser relief. The appellate court, however, held that the collateral attack of the sale was invalid. The court stated:

> We think it may be stated, as a well-settled proposition, that an order of sale and a decree of confirmation made by a court of competent jurisdiction, and having jurisdiction of the parties and the subject matter, have the same force and effect as any other final adjudication of a court, and are subject to attack only by such methods as may be available to set aside other decrees.

*Chapman*, 267 S.W. at 694.

There are sound policy considerations for requiring a party to appeal from an order of the court during pendency of the liquidation and receivership proceeding instead of allowing an appeal following the final order concluding the receivership. Liquidation and receivership of a failed state bank is often a lengthy proceeding. For example, in this case the liquidation and receivership of the bank lasted over six years. An inequitable delay would result which would prejudice the appellate court as well as the parties in interest when no appeals are allowed from orders of the court until the final order is rendered.

Moreover, allowing appeals from prior orders to be asserted after the concluding order directly conflicts with the underlying goal of finality that the order concluding receivership intends. Tex.Rev.Civ.Stat. Ann. art. 342–815 (Vernon Supp.1989) expressly governs orders concluding receiverships. This statute provides that the final

order of approval shall have the force and effect of:

> forfeiting and canceling the corporate charter of such bank, vesting title to the remaining assets ... in the stockholders of said bank, and releasing and discharging the [Receiver] from any further duty, obligation or liability in connection with the administration of the affairs of such bank ...

Permitting appeals like the one in this case conflicts with this statutory liquidation scheme. There must be some finality to orders which dispose of discrete issues or controverted questions by which the parties are going to be bound. Such orders must have some finality so that the statute can be given affect and so that when the final order is rendered those matters have been resolved. To allow appeals like the one in this case would destroy the necessary finality of the concluding order.

■ The order rendered by the trial court in this case is comparable to final orders rendered by any court exercising original probate jurisdiction. A probate order or judgment is final if it conclusively disposes of and is decisive of the issue or controverted question for which that particular part of the proceeding was brought, even if the decision does not fully and finally dispose of the entire probate proceeding. *Fischer v. Williams*, 331 S.W.2d 210, 213 (Tex.1960). *See also Rodeheaver v. Alridge*, 601 S.W.2d 51, 54 (Tex.Civ.App. —Houston [1st Dist.] 1980, writ ref'd n.r. e.); *Estate of Wright*, 676 S.W.2d 161 (Tex. Civ.App.—Corpus Christi 1984, no writ); and TEX.PROB.CODE § 5(e). A probate order is appealable if it finally adjudicates a substantial right, whereas if it merely leads to further hearings on the issue, it is interlocutory. *Parr v. White*, 543 S.W.2d 445, 449 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.); *White v. Pope*, 664 S.W.2d 105 (Tex.Civ.App.—Corpus Christi 1983, no writ). The same standards apply to orders rendered during a receivership proceeding.

■ Although the F.D.I.C. failed to timely perfect its appeal under our holding today, and because that holding's application

is prospective only, we will address the question of whether interest may be properly paid on the claims of the creditors of a failed state bank. We note that in 1985, the Texas legislature engrafted upon the comprehensive liquidation statutes, the so-called "depositor preference statute," Tex. Rev.Civ.Stat.Ann. art. § 342–804a (Vernon Supp.1989). The depositor preference statute for the first time devised a priority system for the various creditors of a failed bank. However, the statute is conspicuously silent on the matter of interest.[1] Without further legislative guidance, a strict interpretation of the statute would compel the conclusion that no interest should be paid on creditor's claims. The cases from other jurisdictions as well as the federal cases cited in the dissent in support of allowing the payment of interest do not involve a priority statute. *See, e.g. Stein v. Delano,* 121 F.2d 975, 978 (3rd Cir.1941), *cert. denied,* 314 U.S. 655, 62 S.Ct. 106, 86 L.Ed. 525. The dissent's reliance on *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985), is not persuasive. In *Cavnar,* the Court noted "[s]ince no statute controls the award of prejudgment interest in personal injury cases, the Cavnars must rely upon equitable considerations in order to prevail on their prejudgment interest claim." *Id.* at 552. In this case, there is a statute which controls the payment of the claims of a failed state bank and the statute does not provide for the payment of interest.

■ Moreover, the facts of this case support the trial court's denial of interest on the F.D.I.C.'s claims based on equitable principles. The court of appeals held, "there is evidence to support the trial court's judgment that some of the fees and expenses were due to the receiver's mis-

handling of the claim on the bond." 757 S.W.2d 912, 915. F.D.I.C. attempted to settle the claim for a fraction of what was ultimately recovered. The surplus in this case is due to Huston's opposition to the proposed settlement that required the trial court to appoint a special prosecutor. Unless inconsistent with other general law, the rules of equity govern all matters relating to the appointment, powers, duties, and liabilities of a receiver and to the powers of a court regarding a receiver. *See* TEX. CIV.PRAC. & REM.CODE ANN. § 64.004 (Vernon 1986). We affirm the trial court's judgment that interest be denied.

■ Because we hold that the F.D.I.C. did not timely perfect an appeal from the trial court's January 15, 1987 order, we reverse the judgment of the court of appeals and affirm the judgment of the trial court. Whether our holding should apply prospectively or retrospectively is a matter within our discretion. *Sanchez v. Schindler,* 651 S.W.2d 249, 254 (Tex.1983). In *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 434 (Tex.1984), we stated:

> Although our decisions usually apply retrospectively, "exceptions are recognized when considerations of fairness and policy" dictate prospective effect only. [citing to *Sanchez* ].

It could be unfair to apply this decision retrospectively, because litigants and trial courts have understandably misconstrued the somewhat cryptic holdings of the cases relied upon herein. Accordingly, our holding as to the time of perfecting appeal will govern all orders rendered in receivership proceedings after the date of this opinion.

HECHT, J., dissenting joined by PHILLIPS, C.J., and GONZALEZ and COOK, JJ.

---

1. Article 342–804a titled "Priority of Claims—Payment" provides: On liquidation of a state or private bank or on execution of a purchase of certain assets and assumption of certain liabilities of a state bank under Article 3a of this chapter, claims for payment against that state bank have the following priority: (1) obligations incurred by the Banking Commissioner, fees and assessments due to the Banking Department, and expenses of liquidation, including any taxes due, all of which may be covered by a proper reserve of funds; (2) claims of deposi-

tors having an approved claim against the general liquidating account of the bank; (3) claims of salaried employees of the bank for salaries that are earned but unpaid at the time the bank is closed or purchased under Article 3a of this chapter; (4) claims of general creditors having an approved claim against the general liquidating account of the bank; (5) claims otherwise proper that were not filed within the time prescribed by this Code; (6) approved claims of subordinated creditors; and (7) claims of stockholders of the bank.

HECHT, Justice, dissenting.

I agree with the rule the Court announces for appealing orders in receiverships. I do not agree, however, either as a rule or in this case, that the creditors of a failed bank should be denied interest on their claims prior to a distribution of any surplus to the bank's stockholders. Accordingly, I dissent.

The Court gives two reasons for concluding that the FDIC is not entitled to interest on its claims against the Bank of Woodson prior to payment of stockholder claims. The first is that article 342–804a, Texas Revised Civil Statutes Annotated (Vernon Supp.1990),[1] which establishes payment priorities for claims against a state bank in liquidation, is silent as to payment of interest on creditors' claims. Although the statute does not prohibit payment of interest on priority claims, a "strict interpretation" of its silence on the matter, says the Court, "would compel the conclusion that no interest should be paid on creditor's claims." *Supra* at 849. Strictly speaking, however, legislative silence does not, by itself, compel or even imply any conclusion one way or the other. No matter how strictly article 342–804a is interpreted, it does not disallow the payment of interest in these circumstances. This Court has previously awarded interest without statutory authorization. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985). The mere absence of statutory authorization for allowing interest in the present circumstances cannot be the end of our analysis.

Like the Texas statute, federal statutes are silent concerning payment of interest on the claims of creditors of a national bank in liquidation. Creditors of a national bank, however, are quite clearly entitled to interest on their claims before the distribution of any surplus to the bank's stockholders. *See Stein v. Delano*, 121 F.2d 975 (5th Cir.1941). This rule is firmly grounded on sound policy: courts have long and consistently favored creditors, including depositors, over shareholders.

> The general rule is that where the assets of an insolvent bank in receivership are more than sufficient to pay all debts, then the creditors are allowed dividends to pay the interest due from the debtor bank, but where the assets are not sufficient to pay the principal of all debts, interest on the general claims will not be computed for the period after the receiver took control.

*Jamison v. Federal Deposit Ins. Corp.*, 149 F.2d 199, 200 (5th Cir.1945), *citing Ticonic Nat'l Bank v. Armstrong*, 303 U.S. 406, 58 S.Ct. 612, 82 L.Ed. 926 (1938). In *Ticonic National Bank*, the Supreme Court observed:

> The bank's obligation to pay interest as damages for the detention of the debt is not cut off by suspension of its business and receivership. The principle has been established, and claimants held entitled to such interest, in cases where the principal amount of each of the claims was paid in full from the assets of the bank (*National Bank v. Mechanics' National Bank*, 94 U.S. 437 [24 L.Ed. 176 (1876)]), including if necessary the double liability of the shareholders (*Richmond v. Irons*,

1. **"Article 342–804a. Priority of Claims—Payment**

"On liquidation of a state or private bank or on execution of a purchase of certain assets and assumption of certain liabilities of a state bank under Article 3a of this chapter, [Article 342–803a] claims for payment against that state bank have the following priority:

"(1) obligations incurred by the Banking Commissioner, fees and assessments due to the Banking Department, and expenses of liquidation, including any taxes due, all of which may be covered by a proper reserve of funds;

"(2) claims of depositors having an approved claim against the general liquidating account of the bank;

"(3) claims of salaried employees of the bank for salaries that are earned but unpaid at the time the bank is closed or purchased under Article 3a of this chapter;

"(4) claims of general creditors having an approved claim against the general liquidating account of the bank;

"(5) claims otherwise proper that were not filed within the time prescribed by this Code;

"(6) approved claims of subordinated creditors; and

"(7) claims of stockholders of the bank."

121 U.S. 27, 64 [7 S.Ct. 788, 805–06, 30 L.Ed. 864 (1887)]).

303 U.S. at 410, 58 S.Ct. at 614.[2] In *National Bank v. Mechanics' National Bank,* the Court specifically noted that the federal statute was silent as to interest upon the claims before or after proof of judgment. 94 U.S. 437, 439, 24 L.Ed. 176 (1876). But the Court concluded: "Where the right to recover exists in this class of cases, it included interest as well as principal, unless there is something which would render the payment of the former inequitable." *Id.,* 94 U.S. at 440.

Like the federal courts, every state court which has ever considered whether interest should be paid on the claims of creditors of a bank in liquidation has held interest allowable. *See Green v. Stone,* 205 Ala. 381, 87 So. 862 (1920); *FDIC v. Leggett,* 204 Ark. 780, 164 S.W.2d 882 (1942); *Greva v. Rainey,* 2 Cal.2d 338, 41 P.2d 328 (1935); *Wells, Fargo & Co. v. Enright,* 127 Cal. 669, 60 P. 439 (1900); *Lamar v. Taylor,* 141 Ga. 227, 80 S.E. 1085 (1914); *People v. Farmers State Bank,* 371 Ill. 222, 20 N.E.2d 502 (1938); *Bates v. Farmers Sav. Bank,* 231 Iowa 1151, 3 N.W.2d 517 (1942); *Flynn v. American Banking & Trust Co.,* 104 Me. 141, 69 A. 771 (1908); *Reichert v. Metropolitan Trust,* 293 Mich. 76, 291 N.W. 228 (1940); *Equitable Holding Co. v. Equitable Bldg. & Loan Ass'n,* 202 Minn. 529, 279 N.W. 736 (1938); *FDIC v. Farmers Bank,* 238 Mo.App. 350, 180 S.W.2d 532 (1944); *Department of Banking v. Elm Creek State Bank,* 205 Neb. 323, 287 N.W.2d 440 (1980); *People v. Merchants' Trust Co.,* 187 N.Y. 293, 79 N.E. 1004 (1907); *Hackney v. Hood,* 203 N.C. 486, 166 S.E. 323 (1932); *Sebring v. FDIC,* 401 P.2d 479 (Okla.1963); *Jones v. Skinner,* 159 Or. 325, 80 P.2d 60 (1938); *Hays v. City Bank,* 48 S.E. 736 (S.C.1904); *In re Liquidation of Badger State Bank,* 70 S.D. 120, 15 N.W.2d 744 (1944); *State v. Park Bank & Trust Co.,* 151 Tenn. 195, 268 S.W. 638 (1925); *Hoffman v. Unger,* 125 W.Va. 501,

24 S.E.2d 911 (1943); *In re Oconto County State Bank,* 245 Wis. 245, 14 N.W.2d 3 (Wis.1944). *See also* 10 Am.Jur.2d *Banks* § 777 (1963); 9 C.J.S. *Banks and Banking* § 527 (1938, Supp.1990); Annot., 39 A.L.R. 457 (1925); Annot., 44 A.L.R. 1170 (1926); Hanson, *Effect of Insolvency Proceedings on Creditor's Right to Interest,* 32 Mich.L. Rev. 1069 (1934); Note, *Banks and Banking—Stockholders Superadded Liability—Liability for Interest and Cost of Receivership,* 39 Colum.L.Rev. 1414 (1939). Although this Court has sometimes taken a position on an issue contrary to every other jurisdiction in the country, *see, e.g., Dow Chem. Co. v. Alfaro,* 786 S.W.2d 674 (Tex. 1990), it usually offers some justification for doing so. Today it neither admits that its holding in this case is unique nor explains why.

It is certainly not obvious why a failed bank's depositors and creditors, who are indisputably entitled to be paid before its stockholders, should not also be made whole before any surplus remaining of the bank's assets is distributed to its shareholders. Indeed, the general rule in this state is that creditors of any corporation in receivership are entitled to interest on their claims if there is any surplus. In *First Nat'l Bank v. Campbell,* 52 Tex.Civ.App. 445, 114 S.W. 887 (1908), *rev'd and remanded on other grounds,* 104 Tex. 457, 140 S.W. 430, *op. on reh'g,* 104 Tex. 576, 141 S.W. 515 (1911), the court stated:

> No interest, however, should be paid out of the general fund after the date of the appointment of the receiver, unless there should be, after all the debts are paid, a surplus to be returned to the stockholders of the respective corporations, in which case interest should be paid in full to date of payment out of such surplus, if not fully satisfied out of the proceeds of the securities. The rule, where applicable, that interest ceases to run when the court takes charge of the property by a receiver, applies in so far as a distribu-

---

**2.** At that time, bank shareholders were typically liable by statute or by state constitution beyond the actual amount of their investment, in a specified amount. Early cases often involved claims to collect this "superadded liability" for

the benefit of creditors. *See* Note, *Banks and Banking—Stockholders Superadded Liability— Liability for Interest and Cost of Receivership,* 39 Colum.L.Rev. 1414 (1939). See also *Stein v. Delano,* 121 F.2d at 978.

tion of the assets in his hands among the creditors is concerned, and cannot be used to protect the corporation from full liability, if it proves to be in fact not insolvent.

One would be hard pressed to explain why a different rule should apply to bank liquidations than applies to receiverships generally. The Court attempts no such explanation. The Court has recognized that a claimant is not made whole unless he is awarded interest from the time his claim is incurred until it is finally paid, and has even gone so far as to characterize not paying interest as inequitable. *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985). Although *Cavnar* involved personal injury plaintiffs and this case involves the FDIC, there does not appear to be any other reason to treat them differently.

In sum, in holding that Texas law does not allow payment of interest on the claims of depositors and creditors of a failed bank before any payment is made to the bank's shareholders, the Court ignores every other state authority and conflicts with its own precedent. I would hold to the contrary, for the same good reasons that have persuaded other courts and legislatures.

The second reason the Court gives for denying the FDIC interest in this case is that the FDIC mishandled the bond claim which produced the surplus being argued over, and on "equitable principles" is not entitled to interest. The Court cites as its only authority for looking to equitable considerations in this case section 64.004 of the Texas Civil Practice and Remedies Code. The Court fails to note that this statute does not govern this case because the bank receiver here is appointed not by the court but by the Commissioner of Banking as authorized by article 342–803 and article 4896, § 3, Texas Revised Civil Statutes Annotated (Vernon Supp.1990).

However, the Court errs in considering any equities in this case for even more important reasons. For one thing, the trial court did not deny the FDIC interest because of any inequitable activity. Rather, the trial court held that *"the law* does not

permit the payment of interest to creditors of the Receivership." (Emphasis added.) The trial court implicitly approved the FDIC's overall handling of the liquidation, allowing most of its expenses.

In addition, there is absolutely no evidence in the record before us of any inequitable conduct by the FDIC. The Court appears to summarize the evidence it finds persuasive as follows:

> F.D.I.C. attempted to settle the claim for a fraction of what was ultimately recovered. The surplus in this case is due to the proposed settlement that required the trial court to appoint a special prosecutor.

*Supra* at 849. The Court has been through the record in this case very carefully, line by line, and there is not so much as a word of evidence to support these assertions. If there were, the Court would certainly cite it. Yet, the Court does not. It does not because it cannot. The Court's conclusion that "the facts of this case support the trial court's denial of interest on the F.D.I.C.'s claims based on equitable principles", *supra* at 849, is not merely a difference of opinion with the dissent. Nor is it simply a different interpretation of the evidence. There is, of course, room for honest disagreement when evidence is confused or conflicting. That is not this case. The Court's assertion that there is evidence in this record of inequitable conduct by the FDIC is a complete fabrication. The Court makes no attempt to meet this charge.

The only other authority referred to by the Court is the court of appeals' statement: "There is evidence to support the trial court's judgment that some of the *fees and expenses* were due to the receiver's mishandling of the claim on the bond." 757 S.W.2d at 915 (emphasis added). This statement does not support the Court's theory. The court of appeals did not state that there was evidence to support a denial of interest; to the contrary, *the court of appeals awarded interest to the FDIC!*

The records of cases in this Court are not readily available to all who will read its opinions. Faithfulness to the record is therefore fundamental to the integrity of

the Court's decisions. The Court today has violated this principle.

I would hold that the FDIC is entitled to interest on its claim in this case. Thus, while I agree with the Court regarding the rule it fashions for appealing orders in receiverships and therefore disagree with that portion of the court of appeals' opinion, I would affirm the judgment of the court of appeals reversing the judgment of the trial court and remanding this case for further proceedings.

PHILLIPS, C.J., and GONZALEZ and COOK, JJ., join in this dissenting opinion.