# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00390-CV

**Glenn Tucker, Individually and on behalf of Cowboy Cab Company,
Ranger Cab Company, Inc., Alamo Cab and Ambassador Cab, Appellants**

**v.**

**Universal Insurance Exchange; Universal Paratransit Insurance Services, Corp.;
DKJ Group, Inc., as the Special Deputy Receiver; and The State of Texas, Appellees**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GV-06-000119, HONORABLE RHONDA HURLEY, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order in a delinquency and rehabilitation proceeding under chapter 443 of the insurance code. *See generally* Tex. Ins. Code Ann. § 443.001-.402 (West 2009). That proceeding involves Universal Insurance Exchange (UIE)—a reciprocal insurance exchange that underwrites primarily "sub-standard" thirty-day personal automobile policies and taxicab policies—and its appointed attorney-in-fact, Universal Paratransit Insurance Services Corp. (Paratransit). UIE had been under some form of administrative oversight or supervision since 1997 and has been in rehabilitation since 2006. The insurance commissioner is the appointed "rehabilitator" or receiver, and he has delegated duties to a special deputy receiver, currently DKJ Group, Inc. In 2007, the district court signed an agreed order approving a rehabilitation plan

whereby the special deputy receiver would first attempt to sell UIE and Paratransit[1] through a three-stage competitive bidding process. If unsuccessful, the special deputy receiver would seek approval to place UIE in "run-off" (i.e., cease underwriting new policies or renewing existing ones) or liquidation. There were ultimately two prospective purchasers who were invited to submit bids. The special deputy receiver concluded that neither bid was adequate to achieve the purposes of rehabilitation. Consequently, the special deputy receiver applied to the district court for an order approving a run-off plan.

Appellant Glenn D. Tucker, an attorney with whom UIE had formerly contracted to manage the company's litigation, was one of the two unsuccessful bidders. Tucker filed an objection to the run-off plan in both his own behalf and as representative of four taxicab companies that were UIE policyholders, appellants Cowboy Cab Company, Ranger Cab Company, Inc., Alamo Cab, and Ambassador Cab (the taxicab companies). Following an evidentiary hearing, the district court held that Tucker individually lacked standing to object to the run-off plan, overruled the taxicab companies' objection, and approved the run-off plan. Tucker, again both individually and on behalf of the taxicab companies (collectively, appellants), filed a notice of appeal and moved for an emergency stay of the run-off plan order pending this Court's resolution of the appeal. We granted the stay. For reasons explained below, we now overrule appellants' contentions on appeal, affirm the district court's order, and vacate the stay.

---

[1] This is a shorthand description of a more complex range of rights related to UIE that was to be put up for bid. Because the parties and the district court have all used "sell UIE" to refer to this process, we will do the same.

In a single issue on appeal,[2] appellants argue that the district court abused its discretion in approving the run-off plan in the face of "clear and convincing evidence" that the special deputy receiver violated statutory duties and the previously approved rehabilitation plan in the process by which it solicited, evaluated, and ultimately rejected bids. The special deputy receiver responds that appellants failed to preserve their current complaints below, that Tucker lacked standing individually to object to the run-off plan, that the taxicab companies' issues are moot because each is no longer a UIE policyholder, and that the district court did not abuse its discretion in overruling appellants' objection.[3] We need only address the last contention.

---

[2] In what they style a second issue, appellants urge us to continue our stay until we dispose of their appeal on the merits. We have done so.

[3] The State of Texas has also filed an appellate brief, which consists of a brief "objection to jurisdiction" in which it "asks . . . that Appellants replead" to clarify the jurisdictional basis for this appeal. Although chapter 443 of the insurance code specifically mentions appeals "from an order of rehabilitation or an order approving a plan of rehabilitation" in mandating they be heard on an expedited basis, *see* Tex. Ins. Code Ann. § 443.101(c) (West 2009), the chapter does not explicitly mention appeal from an order implementing a previously approved plan of rehabilitation, as here. In their statement of jurisdiction, appellants rely on the general rule that trial court orders disposing of discrete issues in receivership proceedings are considered final and appealable, *see Huston v. Federal Dep. Ins. Co.*, 800 S.W.2d 845, 847 (Tex. 1990), such that their appeal would invoke our appellate jurisdiction over final orders and judgments. Alternatively, appellants seek to invoke our mandamus jurisdiction. The special deputy receiver states that "[t]he appeal of the determination of this discrete matter should be within this Court's jurisdiction as a final order." We agree that we have subject-matter jurisdiction over this appeal. While chapter 443 expedites appeals of certain trial court orders made under the chapter, it does not purport to create a right of appeal or exclude appeals of other trial court orders under the chapter, but instead appears to recognize the rights of appeal existing under general law. *See* Tex. Ins. Code Ann. § 443.055 (West 2009) (order to commence formal delinquency proceedings; "*Any appeal* must be prosecuted on an expedited basis . . . ." (emphasis added)), .101(c) ("*[A]ny appeal* from an order of rehabilitation or an order approving a plan of rehabilitation must be heard on an expedited basis." (emphasis added)).

The overarching goal of a rehabilitation plan is fairness and equity "to all parties concerned." *Id.* § 443.103(a) (West 2009). The plan must "provide no less favorable treatment of a claim or class of claims than would occur in liquidation . . . ." *Id.* § 443.103(c)(1). The special deputy receiver, as the delegee of the rehabilitator, has a statutory duty to carry out the rehabilitation plan. *See id.* § 443.103(a) ("If the [rehabilitation] plan is approved, the rehabilitator shall carry out the plan.").

As parties objecting to the run-off plan, appellants had the burden of proving "why the [district] court should not authorize the proposed action." *Id.* § 443.007(e) (West 2009). There is no dispute that the district court reviews the special deputy receiver's actions for abuse of discretion and that this Court, in turn, reviews the district court's ruling under the same standard. *See American Benefit Life Ins. Co. v. Hill Country Life Ins. Co.*, 582 S.W.2d 227, 228 (Tex. Civ. App.—Fort Worth 1979, no writ).

Under the agreed order approving the rehabilitation plan, the special deputy receiver was to first issue a request for qualifications (RFQ) to solicit potential bidders meeting certain minimum requirements to bid. If any "qualified" bidders responded, the special deputy receiver was to send each a request for proposals (RFP) "outlining the minimum requirements for an acceptable bid." In the third and final stage, the special deputy receiver was to:

> review and evaluate the RFP responses and determine which proposal, if any, should be accepted. The Special Deputy Receiver may select a potential buyer and back-up buyer. If a buyer is selected, then the Special Deputy Receiver will enter into negotiations with the buyer. If negotiations with the selected buyer are not successful, for any reason, the Special Deputy Receiver may enter into negotiations with the back-up buyer. Any agreement with a buyer will be conditioned on the

buyer obtaining approval from TDI . . . and approval of the sale by the Court as conditions precedent to the sale . . . .

The order further provided:

> If the Special Deputy Receiver determines that a sale is not feasible or cannot be consummated that will provide at least as favorable treatment to all of UIE's and Paratransit's claimants as a run-off of UIE's book of business, the Special Deputy Receiver will file an application with the Court which contains the Special Deputy Receiver's recommendation as to whether UIE shall be made the subject of a run-off plan or of an order of liquidation.

The RFP issued by the special deputy receiver required bidders to "[d]emonstrate that your firm has adequate and appropriate resources to consummate the proposal and document that the key parties and managers of the management team have the ability to manage and operate an insurance company or any books of business purchased." Bidders were to detail the experience of their management team, including "the extent to which policyholder safety and certainty of payment can be realized" and "the bidder's understanding of the substandard personal auto business and/or the commercial taxicab business." The RFP further advised that bids would be evaluated according to the following criteria:

(a)    MOST IMPORTANT:

    (i)    Does the bidder best demonstrate the understanding of, and experience in, ownership and management of an ongoing insurance company operation?

    (ii)    Does the bidder propose a capable management team?

    (iii)    Does the bidder demonstrate an acceptable plan which provides for the safety and certainty of payments for policyholders?

5

(iv)    Does the bidder demonstrate adequate financial strength to both consummate the transaction and to strengthen reserves or surplus if necessary?

(v)    Does the bidder's business plan demonstrate an acceptable plan of continuing operations or books of business?

(b)    IMPORTANT:

(i)    Does the bidder demonstrate an understanding of the personal and commercial auto business?

(ii)    Does the bidder have adequate procedures to protect the confidentiality of information provided in this RFP?

The RFP further advised that bids "will be evaluated for the extent the bidder's proposal and business plan provides best for policyholder safety and certainty of payment, and in addition, return to policyholders, creditors, and holders of subordinated debentures."

Pursuant to terms in the RFP, the bids were examined by a three-person evaluation committee appointed by the rehabilitator (i.e., the insurance commissioner) and the special deputy receiver. The committee was comprised of a CPA, Tom Petrosewicz, and two of the special deputy receiver's counsel of record. Petrosewicz testified at the hearing. He identified a number of what he perceived as flaws in Tucker's bid:

• Tucker's bid had included a contingent promise to add surplus if needed. This "contingent surplus" was unsatisfactory, Petrosewicz concluded, because the company needed additional cash surplus if it was going to survive financially, especially given the high claims rate of its substandard auto business and the volatility of its taxicab business. He added that statutory accounting principles would not permit UIE to count contingent surplus as an asset.

• Although Tucker had included some insurance industry executives among his proposed officers, Tucker had proposed that he and his wife would serve as the management team. Petrosewicz concluded that Tucker's background in litigation and his wife's background as

6

a human-resources professional would be inadequate for running UIE, especially given its poor financial condition. This was especially so, Petrosewicz observed, because poor claims handling had been one of the primary reasons UIE had gone into receivership.

• On cross-examination, Petrosewicz added that Tucker's bid had not included pro forma statements nor financial projections regarding the impact of Tucker's business plan on surplus.

Petrosewicz and Darwin Johnson, the president of DKJ Group, Inc., the special deputy receiver, provided additional testimony regarding UIE's financial condition and why each concluded run-off was preferable to selling UIE. Petrosewicz explained that while UIE had a current surplus regarding policyholders of around $3 million, this did not include a potential overcharge issue arising from certain extra policy charges that allegedly had been imposed on non-commercial auto customers and allegedly diverted outside the company. If the overcharge must ultimately be paid to policyholders, according to Petrosewicz, it would reduce surplus to less than $200,000 and trigger liquidation. He added that UIE continued to have negative cash flow and that its 30-day policy business was unprofitable. Johnson testified that UIE had been further handicapped by the loss of its largest taxicab agency, which would necessitate additional expenditures by UIE to service the taxicab business. He echoed Petrosewicz's observations that UIE's business was unprofitable. Both concluded that given UIE's challenges going forward, run-off was the best option for UIE's policyholders and creditors.

In contending that the district court abused its discretion, appellants emphasize testimony that, in their view, demonstrates that Petrosewicz and the evaluation committee rejected Tucker's bid based on criteria that were never disclosed to Tucker, in violation of the rehabilitation plan's requirement that the special deputy receiver issue a RFP describing the

7

"minimum requirements for an acceptable bid." They point to Petrosewicz's cross-examination testimony criticizing Tucker's omission of pro forma statements and financial projections, as well as an exchange where Petrosewicz, while insisting that he had no predetermined number in mind, opined that he perceived that a bid "would have some merit" if it provided for at least $3 million in surplus. As appellants observe, the RFP did not contain explicit requirements regarding a minimum amount of surplus or inclusion of financial statements, although Petrosewicz opined that such data is normally included in proposals of this kind where an applicant seeks to demonstrate the financial viability of their plans for a business. Similarly, appellants complain that the committee's consideration of the overcharge issue "did not comply with the spirit" of a previous district court order that had permitted UIE not to book the alleged overcharges as a liability.

In overruling appellants' objections, the district court found that the testimony of Petrosewicz and Johnson had "established that there are reasonable, non-arbitrary bases for rejecting the two bids received and that the bidding process followed the approved plan of rehabilitation." While indicating that it "has some concerns about the objections raised by the objectors regarding the bidding process," the district court found that "those concerns are insufficient to deny the Special Deputy Receiver's Application," and that "[t]he evidence favored instead the Special Deputy Receiver's requested relief." It further found that "[t]he entry of UIE into run-off appears to be the best course for the policyholders and creditors of UIE and Paratransit," "[t]he recommendation that UIE should stop underwriting new business and stop renewing existing business is both reasonable and appropriate," and that "[n]o abuse of discretion has been shown." On this record, summarized above, we conclude that the district court did not abuse its discretion.

8

Beyond this, appellants assert that the special deputy receiver failed to perform its duty under the rehabilitation plan to "review and evaluate the RFP responses and determine which proposal, if any, should be accepted." Appellants point to testimony by Johnson to the effect that he accepted, as president of the special deputy receiver, the evaluation committee's recommendations without independent analysis on his part. Appellants urge that "[c]ontrary to the express terms of the [rehabilitation plan order] directing the Special Deputy Receiver to determine whether a sale is feasible, the Special Deputy Receiver simply chose not to do that and blindly relied on his attorneys to make that decision for him."

The special deputy receiver is a corporation, DKJ Group, Inc., which by definition can act only through its agents. To evaluate the bids, the special deputy receiver utilized a committee of a retained accountant, Petrosewicz, and its attorneys. Chapter 443 contemplates that the rehabilitator or its deputies may perform its duties through attorneys, accountants, and other contracted personnel "as may be deemed necessary." Tex. Ins. Code Ann. § 443.102(a) (West 2009). Ultimately, appellants' complaint boils down to an assertion that Johnson or other employees of the special deputy receiver should have supervised the bidding and evaluation process more closely to prevent the asserted deficiencies appellants identify in the bidding process. Having found no abuse of discretion with respect to the bidding and evaluation process, we similarly reject this contention.

We overrule appellants' issue and affirm the district court's order.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed

Filed:   August 5, 2010